Kalico KALDWELL, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 94–271.

Supreme Court of Wyoming.

Dec. 29, 1995.

Wyoming Public Defender Program: Sylvia Lee Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; Diane M. Lozano, Assistant Public Defender, for Appellant.

William U. Hill, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Prosecution Assistance Program, Theodore E. Lauer, Director, and Gregory J. Blenkinsop, Student Intern, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The sole question raised by this case is whether the district court committed an abuse of discretion in refusing to grant a motion by Kalico Kaldwell (Kaldwell) to withdraw his plea of *nolo contendere*. The motion was made prior to the imposition of sentence pursuant to WYO.R.CRIM.P. 32(d). Our examination of the record discloses no abuse of discretion by the trial court. We hold that the trial court properly applied the standard articulated in the rule and correctly concluded Kaldwell had failed to demonstrate any fair and just reason for the withdrawal of his plea. Even had a fair and just reason been presented, no abuse of discretion will be found if the requirements of WYO.R.CRIM.P. 11 were satisfied and the plea was intentionally, knowingly, and voluntarily entered. The Judgment and Sentence of the Court is affirmed.

In his Brief of the Appellant, Kaldwell sets forth the issue as:

> Did the trial court abuse its discretion by denying Appellant's motion to withdraw his *nolo contendere* plea?

The State of Wyoming, in its Brief of the Appellee, restates the same issue, in substantially identical language, as follows:

> Did the district court abuse its discretion in denying Appellant's motion to withdraw his plea of *nolo contendere* prior to sentencing?

On August 25, 1993, Kaldwell was charged by an information with two counts of delivery of marijuana in violation of WYO.STAT. §§ 35–7–1031(a)(ii) (1988) and 35–7–1014(d)(xxi) (1988).[1] Kaldwell waived his right to a pre-

---

1. WYO.STAT. § 35–7–1031 (1988) forbids the unlawful manufacture or delivery of controlled substances and provides, in pertinent part:

   (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

   \*　　\*　　\*　　\*　　\*　　\*

   (ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime

   and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both; \* \* \*.

   WYO STAT. § 35–7–1014(d)(xxi) (1988) lists the controlled substances included in Schedule I and provides, in pertinent part:

   (d) *Hallucinogenic substances.*—Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their

liminary examination, was bound over to the district court, and released on his own recognizance. He failed to appear on three separate occasions, but did appear for arraignment on April 7, 1994, and then entered a plea of not guilty. The record discloses the following dialogue on that occasion (emphasis added):

THE COURT: Are you presently under the influence of alcohol or drugs?

THE DEFENDANT: No, sir.

THE COURT: **Do you have any mental illness or deficiency that would prevent you from understanding these proceedings?**

THE DEFENDANT: No, sir.

THE COURT: Or that would prevent you from intelligently, knowingly, and voluntarily entering a plea to the charges?

THE DEFENDANT: No, sir.

Subsequently, a plea agreement was reached between the State and Kaldwell and, on May 27, 1994, Kaldwell appeared for the purpose of changing his plea. On that occasion, the trial judge advised Kaldwell of: the nature of the charges against him; the mandatory minimum and maximum penalties provided by law; the assessments that could be levied at sentencing; the ramifications of a *nolo contendere* plea; his right to be represented by an attorney at every stage of the proceeding; his right to persist in his plea of not guilty and proceed to a jury trial where he would have the right to assistance of counsel and the presumption of innocence; the right to confront and cross-examine adverse witnesses; the right to subpoena other witnesses and produce evidence on his behalf; the right to be free of self-incrimination; and the right to an appeal should he be found guilty. There is no contention that Kaldwell did not receive the advice from the court required by WYO.R.CRIM.P. 11. Significantly, at both the original arraignment and the proceeding at which he changed his plea, he was advised of the potential of a prison sentence. Kaldwell did enter a plea of *nolo contendere* at that time, and there followed a demonstration of the factual basis for Kaldwell's plea of *nolo contendere.*

On August 12, 1994, in open court, Kaldwell asked to withdraw the plea of *nolo contendere*, asserting he had entered the plea to secure his release from jail. The judge recalled the plea had been voluntary and unconditional, but he agreed to review the transcript of the proceeding. The judge stated, "[i]f there's some glitch in the transcript of those proceedings, I'll certainly consider it [allowing the withdrawal of the plea of *nolo contendere*]."

On August 23, 1994, after the trial court had reviewed the transcript of the proceeding in which Kaldwell entered his plea of *nolo contendere*, it denied Kaldwell's motion to withdraw his plea. Kaldwell's defense counsel was granted leave to withdraw from representation because of the possibility he could be called as a witness regarding the motion to withdraw the plea. Kaldwell's replacement counsel filed a written motion to withdraw the plea of *nolo contendere* on August 29, 1994. The hearing on that motion was held on September 1, 1994, and the motion was again denied. On September 2, 1994, Kaldwell was sentenced to a term of not less than twenty, nor more than thirty, months in the Wyoming state penitentiary. He appealed from that judgment and sentence.

■ In Wyoming, withdrawal of a plea of *nolo contendere* is provided for in WYO. R.CRIM.P. 32(d):

salts, isomers and salts of isomers whenever the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation (for purposes of this paragraph only, the term "isomer" includes the optical, position and geometric isomers): * * *.

(xxi) Tetrahydrocannabinols; synthetic equivalents of the substances contained in the plant or in the resinous extractives of Cannabis, sp. and/or synthetic substances, derivatives and their isomers with similar chemical structure and pharmacological activity such as the following: delta 1 cis or trans tetrahydrocannabinol and their optical isomers; delta 6 cis or trans tetrahydrocannabinol and their optical isomers; delta to the 3, 4 cis or trans tetrahydrocannabinol and its optical isomers. Since nomenclature of these substances is not internationally standardized, compounds of these structures, regardless of numerical designation of atomic positions are covered; * * *.

*Plea withdrawal.*—If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any **fair and just reason.** At any later time, a plea may be set aside only to correct manifest injustice. (Emphasis added.)

In *Dichard v. State,* 844 P.2d 484, 486 (Wyo. 1992), we said:

As indicated by the rule's permissive tenor, whether or not to permit a withdrawal of a guilty or nolo contendere plea lies within the discretion of the district court. *See, e.g., Reay v. State,* 800 P.2d 499 (Wyo. 1990).

The action of the trial court in denying a motion to withdraw a plea of guilty is to be set aside only for abuse of that recognized discretion. *Dichard.*

In *Reay v. State,* 800 P.2d 499, 500 (Wyo.1990) (citing *Zanetti v. State,* 783 P.2d 134, 137 (Wyo.1989), we approved the district court's conclusion that "[a] defendant seeking to withdraw his guilty plea prior to sentencing must present a plausible reason for withdrawal." We have clarified, both prior to and following *Reay,* the interaction between WYO.R.CRIM.P. 11 and WYO.R.CRIM.P. 32 with respect to withdrawal of a plea:

Withdrawal of a plea of guilty before sentencing is not an absolute right. Denial by the district court is within its sound discretion and there must be a plausible reason for withdrawal. *United States v. Webster,* 9 Cir.1972, 468 F.2d 769, cert. den., 410 U.S. 934, 93 S.Ct. 1385, 35 L.Ed.2d 597; *United States v. Valdez,* 5 Cir.1971, 450 F.2d 1145. See also *United States v. Needles,* 2 Cir.1973, 472 F.2d 652. Where an exhaustive voir dire of defendant before accepting plea makes it abundantly clear that the plea was entered voluntarily, with full understanding of its consequences, and there is a factual basis, there is no abuse of discretion. *United States v. Fernandez,* 2 Cir.1970, 428 F.2d 578. When a patient and understanding judge gives every consideration to a defendant's change of position the day before trial and the defendant attempts to mock the administration of justice, there is no abuse of

discretion. *Burnett v. United States,* 10 Cir.1968, 404 F.2d 29.

*Ecker v. State,* 545 P.2d 641, 642 (Wyo.1976).

In *Triplett v. State,* 802 P.2d 162, 165 (Wyo.1990), we expressed the rule in this way:

In *Schmidt [Schmidt v. State,* 668 P.2d 656 (Wyo.1983) ], this court held that simply the presentation of a plausible reason to withdraw the plea of guilty does not establish an abuse of discretion in denying the motion. In that case, the court ruled that abuse of discretion is not demonstrated even if a "plausible" or a "just and fair" reason for withdrawal is presented if the requirements of Rule 15 [now Rule 11], W.R.Cr.P., have been met and the record is clear that the defendant intelligently, knowingly, and voluntarily entered into his plea of guilty. If those criteria are satisfied, it is not an abuse of discretion to refuse to allow withdrawal of the plea. *See also Osborn [Osborn v. State,* 672 P.2d 777 (Wyo.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984) ]; *Ecker [Ecker v. State,* 545 P.2d 641 (Wyo. 1976) ].

*Triplett* and our other cases make clear that a defendant has no absolute right to withdraw his plea of guilty prior to sentencing. These are the pertinent standards in this case.

The hearing on the written motion to withdraw the plea of *nolo contendere,* filed by Kaldwell's replacement counsel, included both direct and cross-examination of Kaldwell. Kaldwell testified he had entered his plea of *nolo contendere* because the original attorney "told me to plead guilty to the charge and I could go home." Kaldwell said he believed he then would be permanently released from the charges. The judge said:

I think what we have here is a serious question of credibility as to what's happened here on the stand today from the defendant. It looks to me like it's a case of recent fabrication, that he has this frame of mind that he really didn't know that he would be up for sentencing. He should have known back in May that there

were sentencing consequences, for a variety of reasons.

First, the court advised him of that fact.

Secondly, he was asked to go to the probation department and do a presentencing report.

Thirdly, when he was brought back to this court in return of a bench warrant, the probation agent—and I recall very vividly at that hearing, I told Mr. Kaldwell, "you don't have to cooperate if you don't want to, but it is something the court will take into account at your sentencing."

All of these events took place some time before the sentencing. Only after the presentencing report was developed and it became evident to Mr. Kalico—or to Mr. Kaldwell that there's possible penitentiary consequences, only then did he decide to withdraw—to file a motion to withdraw his plea.

I think that based on that scenario I have no choice but to deny the motion to withdraw the plea, and to set this matter for sentencing tomorrow, along with all other matters.

At the sentencing hearing, on September 2, 1994, Kaldwell presented a motion for reconsideration. This included an unsworn statement in the form of an affidavit by his original counsel stating:

I, [name of original counsel], previous attorney for Defendant, Kalico Kaldwell, do solemnly swear that prior to Defendant's arraignment, [name of prosecuting attorney], Assistant District Attorney, did state to me that "If the Defendant would plea guilty to one count of delivery of marijuana that I'll let him out of jail." Prior to arraignment I relayed said information to the Defendant. I did not elaborate further on the District Attorney's statement nor explain to the Defendant that he would still be possibly subjected to a prison sentence. He didn't ask. I don't recall if I had further conversations relative to Defendant's plea prior to his arraignment.

The judge remarked that this unsworn statement merely confirmed Kaldwell's testimony at the previous motion hearing and, therefore, did not constitute new evidence in support of the motion to withdraw.

Kaldwell contends the district court did abuse its discretion in denying the motion to withdraw his plea of *nolo contendere*. He claims he was confused at the May 27 arraignment, and he did not understand, nor did his defense attorney explain, the ramifications of his plea. He argues, when the consequences of that plea were articulated, he only understood he would get to go home, and he thought he would be free from prosecution. He contends he maintained his innocence to his attorney. He points to the facts that his formal education only extended through grade seven; he suffered a stroke in 1984, for which he received social security benefits; he suffered another mild stroke in 1990; and his scores on the California achievement tests were borderline and dropped after the first stroke. He asserts his plea was unknowing and involuntary and in contravention of the requirements of WYO. R.CRIM.P. 11. These are the fair and just reasons he offers to justify the withdrawal of his plea.

■ An examination of the record fails to support Kaldwell's claims that he believed the plea would enable him to have the charges dropped, and he would be free from prosecution. The court advised him of the charges of delivery of marijuana; stated he was exposed to a possible sentence of ten years in the Wyoming state penitentiary if he should plead guilty; defined the terms of the plea agreement pursuant to which the State agreed to drop the second count and recommend release on his own recognizance until sentencing; stated a *nolo contendere* plea was equivalent to a plea of guilty; told Kaldwell the guilty plea constituted a waiver of the right to trial and appeal; advised Kaldwell he could return to his home in Fort Collins, but he could not leave Fort Collins, except to return to Cheyenne for his court appearance; stated a presentence report would be prepared; and the court required Kaldwell to contact the Department of Probation and Parole before leaving Cheyenne so he would know when to return for sentencing. Kaldwell listened to the State's offer of proof and replied in the negative when the court asked him if he had any basis to

contest that information. The court specifically asked, "[h]as anybody promised you anything else in exchange for your no contest plea?" Kaldwell replied, "[n]o sir." The court then determined he had not been threatened, and his plea was entirely voluntary. The court found Kaldwell was competent and represented by competent counsel.

Following arraignment and Kaldwell's plea, the trial court afforded him two opportunities to present his motions to withdraw his plea. The court reviewed the transcript of Kaldwell's arraignment and pointed out Kaldwell had a number of reasons for understanding the consequences of his plea. The court noted it had advised him of that fact; he was asked to go to the probation department for a presentence report; he was advised his lack of cooperation would be something the court would take into account at the sentencing; and the State presented a factual basis for the plea to which he did not object. We hold, as did the trial court, that Kaldwell intelligently, knowingly, and voluntarily entered his plea of *nolo contendere*.

■ Concerning Kaldwell's claims that he had difficulty understanding the proceeding, Kaldwell had been convicted of five different felonies in the years 1962, 1963, 1975, and 1976. In *Mehring v. State*, 860 P.2d 1101, 1108 (Wyo.1993), we held knowledge of the criminal justice system is a factor to consider in determining the voluntariness of a plea. The following colloquy occurred between the prosecuting attorney and Kaldwell at the evidentiary hearing:

Q. You've pled guilty before in court; is that correct? You have stood up before a judge and said Guilty, Your Honor before?

A. Yes.

Q. Okay. On each and every occasion, you've had a sentencing; isn't that correct?

A. I'm not sure on that. I'm not sure what you're saying.

Q. Mr. Kaldwell, what I'm saying is, no matter if you're found guilty by a jury, if you plead guilty to a judge, as a matter of course, and you know it, a sentencing follows. Isn't that true?

A. Yes.

Although Kaldwell argues he had not been in the criminal justice system since 1985, his prior experiences in criminal proceedings involving felonies were indeed factors to be considered in determining whether he understood the process.

Kaldwell argued he had attended school only through the fifth grade, but he later agreed he had attended through the seventh grade. This contention is less than candid, however, because the presentence investigation report demonstrates he finished the seventh grade in Denver and went on to complete the eleventh grade. Nowhere in the interactions with his attorney or the court did Kaldwell advise he was not capable of understanding the nature and quality of this act in entering a plea of *nolo contendere* and its consequences. He states the motivation for his plea was that he wanted to be released from jail so he could go home, but his capacity to understand, not his motive, is the question we must address.

With respect to the contention that the two strokes affected his ability to understand the proceedings, the record discloses a California achievement test administered in 1985 indicated his intelligence scores were borderline. These scores were lower than the scores from his previous incarceration in 1976, but the differences were not extreme. The 1985 report opined Kaldwell did suffer some brain damage from the 1984 stroke but, "he seems to be getting all the sympathy possible rather than working at overcoming the new handicap." Kaldwell presented no evidence concerning how the mild stroke in 1990 affected his ability to make a knowing, intelligent, and voluntary plea.

In *Dichard*, 844 P.2d at 487, we found the testimony produced at the motion hearing was so "patently inconsistent" with the defendant's testimony when he entered his plea that his credibility was seriously in question. Similarly, in this instance, the testimony Kaldwell offered at the motion hearing was patently inconsistent with the testimony offered when he entered his plea. The inconsistency was so pronounced that the judge commented on it in the record and indicated a concern of recent fabrication. In our view,

Kaldwell's position is not only incredible, but it broaches upon being irrational.

In any event, Kaldwell's attorney did not present the issue of diminished capacity to the court during the arraignment or call it to the attention of the State at the sessions leading to the plea bargain. Kaldwell's counsel did not treat him as if he were functioning under diminished capacity in the course of his conferences with Kaldwell. Probably, Kaldwell did not manifest diminished capacity to his counsel.

After examining this record, we hold there was no abuse of discretion by the district court when it denied Kaldwell's motion to withdraw his plea of *nolo contendere*. On the day of the arraignment, Kaldwell possessed sufficient intelligence to know he was charged with unlawful delivery of marijuana; he understood the nature of the charges; and he knew a plea of *nolo contendere* constituted an admission of guilt that could subject him to imprisonment. The State presented a factual basis for the plea. It is inconceivable, especially considering the judge's comments during the arraignment, that Kaldwell could believe his plea would relieve him of the consequences of his actions. That plea was entered intelligently, knowingly, and voluntarily. Even if we were to acknowledge that Kaldwell presented a "plausible" or a "just and fair" reason to withdraw the plea, he has no absolute right to do so.

The denial by the trial court of Kaldwell's motion to withdraw his plea of *nolo contendere* is affirmed, and the Judgment and Sentence of the Court is affirmed.