Dennis ARNER, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–69.

Supreme Court of Wyoming.

April 1, 1994.

Michael J. Krampner and Donald L. Fuller (argued), Casper, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl (argued), Deputy Atty. Gen., and D. Michael Pauling, Sr. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Dennis Joseph Arner (Arner) was convicted of two counts of obtaining property by false pretenses and now appeals claiming ineffective assistance of counsel and that the prosecution's questioning of Arner concerning a prior felony conviction amounted to plain error.

We affirm.

Arner phrases the issues as follows:

I. Was appellant denied effective assistance of counsel by his trial counsel's failure to voir dire, introduction of otherwise inadmissible "bad acts" evidence, failure to object to the prosecutor's introduction of evidence which was inadmissible under Rule 609, W.R.E., failure to request a limiting instruction, and failure to object to the prosecutor's attempt to shift the burden of proof to the defense?

II. Was the prosecutor's questioning of the appellant about the details of a prior conviction plain error requiring reversal?

### FACTS

On the morning of December 8, 1991, Dennis Arner discovered that two of his cars, a van and a sedan, and his garage had been broken into sometime the previous night. He contacted the police, and Officer Platt of the Casper Police Department was dispatched to Arner's home. Arner showed Officer Platt that the thieves had unsuccessfully attempted to take his van's stereo by removing the knobs and faceplate from the stereo. At that time, when asked if anything was missing from the two cars and the garage, Arner did not report anything stolen. Officer Platt filled out a report and told Arner to contact the department if he discovered anything missing.

According to his testimony, soon after Officer Platt departed that morning, Arner noticed that a shelf in the garage was dislodged and discovered that his snowblower and acetylene torch were missing. Arner did not notify the police about these missing items for a number of months. However, that same day, Arner telephoned his insurance agent and reported the items stolen. On advice from his insurance agent, Arner prepared a written list of the items stolen and their replacement value and delivered the list to his agent. On December 10, 1991, Arner's insurance agent issued Arner a check for his claim on the stolen snowblower and acetylene torch. Arner further testified that, after he cashed the insurance check, he purchased a new snowblower from Ideal Lawnmower Shop for $700.00.

Several weeks later, on the morning of December 28, 1991, Arner discovered that his van and garage had again been burglarized. The police were summoned, and Officer Butler was dispatched to Arner's home. This time the van was damaged more severely and, according to Arner, his new snowblower, four tires and wheels, two snowmobile helmets, a radial saw, and a television and video recorder/player (VCR) were all missing. Arner contacted his insurance agent that same day to report the second burglary, and the agent turned the claim over to a claims adjuster in Casper.

On December 30, 1991, Arner filled out an inventory form describing the items allegedly stolen during the second break-in and gave a taped statement to the claims adjuster in Casper. The inventory form listed a snowblower, RCA brand VCR ac/dc adaptable, a television, Uniroyal tires, snowmobile helmets, a radial saw, and chrome wheels and hubs. During the taped statement, Arner described the items as follows:

> Okay, there was a Toro snowthrowing, 4.5 horsepower, model number 38180, I have an appraisal from Ideal Lawnmower Shop for replacement of 599.95[.]

> \* \* \* \* \* \*

> Yes, it was brand new, it never had oil and gas in it. An RCA VCR, that's ac adaptable for use in vehicle, unknown model number, it can be purchased at Radio Shack for 199.95[.]

> \* \* \* \* \* \*

> [A] small Sony [television], 6 [inches.]

> \* \* \* \* \* \*

> Okay there were a set of wheels and tires that I exchange over from summer to winter on the van, Uniroyal Radial Tigerpaws, purchased at Plains Tire and Battery, this summer of 91[.]

> \* \* \* \* \* \*

> The wheels were American Racing Chrome Wheels, they were purchased at the same time as the tires[.]

> \* \* \* \* \* \*

> Uh, two snowmobile helmets, the model number or anything like that I can't get,

they were purchased at K–Mart, uh, $75.00 a piece[.]

On January 3, 1992, based on this interview and the written inventory, the claims adjuster issued Arner a check for coverage of the snowblower, television, VCR and the radial saw, all allegedly taken during the second burglary.

Ironically, also on December 30, 1991, Detective Burnett with the Casper Police Department began questioning several teenagers concerning numerous recent burglaries, including the two Arner burglaries. Three of the teenagers admitted to a number of thefts and break-ins including the Arner burglaries. All three were involved in the first Arner burglary, and one of the three, plus a fourth, admitted committing the second Arner burglary. Detective Burnett questioned the teenagers about the items stolen during the burglaries. Each of the teenagers related similar accounts of their actions during the first Arner burglary in early December 1991, and the two teenagers involved in the second Arner Burglary in late December 1991, also gave similar stories to Detective Burnett.

At Arner's trial, all three of the admitted burglars related the same accounts of their actions during the first Arner burglary. Each testified that during the first Arner burglary: (1) they were on foot and did not have a car, (2) that Arner's garage door was open, (3) that they tried to take the stereo from Arner's van but could only remove the knobs and faceplate, (4) that one of them took a cassette tape but in the process knocked a number of other tapes on the floor which caused enough noise to scare them off, and (5) that they did not take a snowblower or welding equipment. Only one of the teenagers involved in the second Arner burglary testified at Arner's trial, and he stated that he and another teenager took only the stereo from Arner's van, the amplifier and several speakers. He specifically denied taking the new snowblower, VCR, television, or the tires and wheels and stated that the Arner's garage door was closed during this second burglary.

Sometime in the middle of January, 1992, Detective Burnett and another Casper police officer spoke with Arner at his home. In that conversation, Arner described the items he alleged were taken during the second December burglary, and he stated that he had filed a claim with his insurance for these items. After this conversation, Detective Burnett inquired with Ideal Lawnmower Shop, where Arner purportedly purchased the new snowblower after the first burglary, and Plains Tire and Battery, where Arner claimed to have purchased the new tires and wheels which were allegedly taken during the second burglary. Neither of these retailers could locate records of the purported snowblower or tire and wheel sales to Arner; thus, on February 25, 1992, Detective Burnett contacted Arner again for more information on the snowblower and the tires and wheels.

On February 27, Detective Burnett visited and questioned both Arner's insurance agent and the insurance adjuster. At that time, Detective Burnett first learned that Arner had filed a claim after the first burglary for items which were not yet reported stolen by Arner. After this meeting with the insurance representatives, Detective Burnett continued his investigation until Arner was arrested in late May, 1992. On November 4, 1992, a jury convicted Arner of two counts of obtaining property by false pretenses, from which he now appeals.

### DISCUSSION

In this appeal, Arner first argues that he was denied effective assistance of counsel because his trial attorney failed to conduct a proper voir dire, failed to properly handle the admission of evidence of a prior conviction and of a prior "bad act" and failed to object to allegedly improper prosecutorial questioning. In his second assertion, Arner argues that the admission of certain evidence surrounding his prior drug trafficking conviction was plain error.

### A. Ineffective Assistance of Counsel

■ Our method for reviewing claims of ineffective assistance of counsel is firmly established and is comprehensively described in the following passage:

The standard with respect to effective assistance of counsel requires the criminal defense to satisfy two criteria:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

\*    \*    \*    \*    \*    \*

We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance, bearing in mind the function of counsel is to make the adversarial testing process work in every case. *Strickland; Gist [v. State,* 737 P.2d 336, 343 (Wyo.1987) ]. We do not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. *Strickland.* "We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist,* 737 P.2d at 342 (citations omitted). The burden is upon the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy. *Strickland.*

*Dickeson v. State,* 843 P.2d 606, 609 (Wyo. 1992).

Our first step is to determine whether Arner has demonstrated that his counsel's performance fell outside the "ambit of professionally competent assistance." *Dickeson,* 843 P.2d at 609. Arner, in his brief, rests his claim of ineffective assistance on the trial transcript which often is sufficient in itself with no necessity of an evidentiary hearing under *Calene v. State,* 846 P.2d 679, 692 (Wyo.1993).

■ In his first claim of ineffective assistance, Arner asserts that his trial counsel failed to conduct adequate voir dire. During voir dire Arner's trial counsel posed very few questions to the potential jurors despite several jurors acknowledging relationships with police officers involved in Arner's case. Simply because a potential juror is related to or acquainted with a police officer involved in the investigation of the case does not establish per se bias. *See Walter v. United States,* 386 F.Supp. 309, 311 (W.D.Okla.1974); *State ex rel. Boso v. Hedrick,* 391 S.E.2d 614, 619 (W.Va.1990) (effective assistance of counsel was afforded where defense counsel failed to further question potential jurors who acknowledged relationship with law enforcement because there was no proof of the jurors' bias and judge asked *sua sponte* further probing questions). In both instances in this case where potential jurors acknowledged their relationship to law enforcement, the trial judge asked each juror a series of questions concerning his or her ability to be impartial. Neither of the potential jurors demonstrated any bias in answering those questions. Without more, we cannot conclude that Arner's counsel's failure to further question these jurors fell below the line of professionally competent assistance.

■ Arner also complains that his trial attorney's general lack of questioning at voir dire amounted to ineffective assistance. The trial judge asked a number of questions of the potential jury which provided significant information. The trial judge questioned the potential jurors about pretrial publicity, experiences or relationships with all the parties involved, experiences with the criminal justice system, and experiences with insurance

claims and the insurance industry. The information elicited by the trial judge's questioning was sufficient for Arner's trial counsel to utilize his challenges, four of which he exercised properly. *See State v. Sanchez*, 98 N.M. 781, 784, 652 P.2d 1232, 1235 (App. 1982) (criminal defendant not denied effective assistance of counsel where counsel did not ask many questions at voir dire because trial judge's and State's questioning were sufficiently revealing).

▆▆▆▆ Voir dire and the exercise of challenging jurors is trial strategy. *Stover v. State*, 674 P.2d 566, 568 (Okla.Cr.App.1984) (citing *Walter*, 386 F.Supp. 309). In *Jahnke v. State*, 682 P.2d 991 (Wyo.1984), while addressing the process and purpose of voir dire, we quoted the United States Supreme Court:

> " 'Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.' " *Dennis v. United States*, 339 U.S. [162] at 172, 70 S.Ct. [519] at 523, 94 L.Ed. 734 [ (1950) ], quoting from *United States v. Wood*, 299 U.S. 123, 145–146, 57 S.Ct. 177, 185[, 81 L.Ed. 78] (1936).

*Jahnke*, 682 P.2d at 999. Because voir dire questioning techniques are diverse, any alleged voir dire error must be egregious and obvious in order to fall below the line of competence. Having determined that Arner's trial counsel's actions at voir dire do not fall outside the realm of competent assistance, we need not address whether any prejudice resulted from the alleged voir dire errors.

Arner next asserts that he was denied effective assistance of counsel because his trial counsel inquired into a prior civil suit in which Arner was sued by a former employer. He also complains that his trial counsel failed to confront the prosecution's questioning of Arner concerning a prior conviction for distributing cocaine.

▆▆▆▆ On direct exam of Arner, his counsel questioned him concerning a civil suit involving franchise fees, which had previously been filed against Arner by his former employer and then dismissed. Arner argues that the only possible strategy that his counsel could have had in introducing this evidence was to cushion the blow of it being introduced by the prosecution. He complains that the strategy (if it was a strategy) was misguided because the evidence was clearly inadmissible. The State suggests that Arner's trial counsel may have been trying to bolster Arner's credibility by demonstrating his honesty in admitting this prior civil suit or that his counsel wanted to show the jury that Arner had prevailed in a prior action. We do not know precisely why Arner's trial counsel questioned Arner about this prior civil suit but each of the potential reasons suggested by Arner and the State is plausible. It is a legitimate trial tactic to have a criminal defendant, who takes the stand, discuss his or her prior bad acts which may arise in cross-examination. *Robinson v. State*, 716 P.2d 364, 368 (Wyo.1986). Arner has failed to meet his burden of demonstrating that his trial counsel was deficient when he questioned Arner concerning the prior civil suit, therefore we cannot conclude that it was ineffective assistance of counsel.

On cross-examination of Arner, the prosecution introduced evidence concerning Arner's 1985 conviction for dealing cocaine. The damaging testimony occurred as follows:

Q. But, Mr. Arner, you yourself are a convicted cocaine dealer, you were convicted in 1985 of three felony counts of distribution of cocaine.

A. Yes.

Q. And you never got off probation until 1989, is that correct?

·A. I don't recall exactly when I got off probation, I was on probation for that, yes, and I served probation and I was cleared and waiting for my discharge.

Q. They discharged you from probation in 1989 after you had some difficulty paying restitution, four years to pay your restitution. Is that correct?

A. That could be, yes, I raised children by myself, I was divorced and had struggled at times.

Q. So from that I gather, Mr. Arner, that you in your life had not been adverse to making money illegally.

A. Excuse me.

Q. You were apparently not adverse to making money from illegal methods.

A. I don't think [I] ever stated what I did with my mistakes in drugs were for money profiting, Mr. [Prosecutor].

Q. Four different sales in three different months, the last one for $600, and wasn't for money?

A. That is correct.

Arner's counsel did nothing to combat this potentially damaging evidence. He did not attempt to (1) "cushion the blow" by having Arner voluntarily discuss this prior conviction on direct, (2) limit the scope of the prosecution's questioning through an objection or through a request for a limiting instruction, or (3) have the court determine, pretrial, whether the evidence was admissible. It was as if he was unaware of the prior conviction.

In a similar situation, a Missouri Court of Appeals, applying the two-part *Strickland* test, held that effective assistance of counsel was denied, in part, because the convicted defendant's trial counsel failed to object when the prosecutor introduced evidence of prior convictions and evidence of uncharged illegal drug use. *Kenner v. State*, 709 S.W.2d 536 (Mo.App.1986). That court stated:

The law concerning the admissibility of crimes other than those for which a defendant is on trial is very basic and not obscure. The knowledge of this principle or the acquisition thereof along with actions reasonably taken in accordance with that knowledge are within the expected standard of an attorney defending a person accused of a crime.

*Id.*, at 539. We agree with this statement. Both W.R.E. 404 and 609 directly address the admissibility of prior convictions and have been the subject of innumerable opinions published by this court. *See, e.g., Barnes v. State*, 858 P.2d 522, 531–33 (Wyo. 1993) (W.R.E. 404); *Gentry v. State*, 806 P.2d 1269, 1271–72 (Wyo.1991) (W.R.E. 609).

■ There appears to be no strategic or tactical reason for the failure of Arner's trial counsel to confront this prior drug conviction. If he was conceding admissibility, why did he not "cushion the blow" by raising the conviction on direct, ask for a limiting instruction, and/or object when the prosecutor appeared to exceed the bounds of the admissibility of the evidence? *See, e.g., Robinson*, 716 P.2d at 368; *Gentry*, 806 P.2d at 1271 ("cushioning the blow" as a legitimate trial tactic); *see also* W.R.E. 104 and 105, and *Grabill v. State*, 621 P.2d 802, 812 (Wyo.1980) (when timely requested, a limiting instruction should be given when evidence of other crimes, wrongs or acts by the accused are admitted), and *see* W.R.E. 609, and *Bradley v. State*, 635 P.2d 1161, 1163 n. 3 (Wyo.1981) (limiting the scope of evidence of prior convictions under W.R.E. 609). On the other hand, if he was contesting admissibility, why not file a pretrial motion? If he was unaware of the prior conviction, was it not his duty to discover the conviction through reasonable investigation? *See In the Interest of LDO*, 858 P.2d 553, 557 (Wyo.1993). The record does not answer these questions, and without questioning Arner's trial counsel, neither can we. Because, however, the record does reflect that Arner's trial counsel appeared to have no strategy at all, other than simply to ignore the evidence of a prior drug distribution conviction and hope that the jury did the same, we must hold that he failed to perform within the bounds of professional competence.

■ However, in applying the second prong of the *Strickland* test, we hold that Arner has not met his burden of proving prejudice. Arner is required to demonstrate " 'a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.' " *Dickeson*, 843 P.2d at 611–12 (citing *Frias v. State*, 722 P.2d 135, 147 (Wyo.1986)). In Arner's best case scenario, the evidence of his prior conviction for cocaine distribution would have been held inadmissible either pretrial or through an objection during the trial, and the jury would never have known of his prior conviction. Without that evidence, however, the prosecu-

tion presented substantial evidence to support Arner's conviction.

Wyoming Statute 6–3–407, of which Arner was convicted, provides:

> (a) A person who knowingly obtains property from another person by false pretenses with intent to defraud the person is guilty of:
>
>> (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more[.]

In order to demonstrate a violation of § 6–3–407(a), the State had to establish the following elements beyond a reasonable doubt:

> (1) the pretenses;
>
> (2) their falsity;
>
> (3) the fact of obtaining property by reason of the pretenses;
>
> (4) the knowledge of the accused of their falsity; and
>
> (5) the intent to defraud.

*Lopez v. State*, 788 P.2d 1150, 1152 (Wyo. 1990). Both elements (1) and (3) involving the pretenses were undisputed at trial; Arner admits he filed these insurance claims and that he obtained property—money— based on those claims.

The evidence demonstrating falsity of the pretenses, Arner's knowledge of that falsity, and his intent to defraud the insurance company was circumstantial yet substantial. Arner's first insurance claim stated that his snowblower and acetylene torch were stolen from his garage. To demonstrate that those claims of loss were false, that Arner knew they were false, and that Arner intended to defraud his insurance company, the prosecution provided: (1) testimony by the three admitted burglars stating, consistently, that they took only a cassette tape during the first burglary, (2) testimony by Arner that he did not report the allegedly stolen snowblower or acetylene torch to the police until after he became aware that he was being investigated despite the fact that he reported the same items stolen to his insurance agent the day he reported the burglary, and (3) testimony by Arner's insurance agent that Arner

never provided any documentation for the alleged missing items to substantiate this claim, as was requested by the agent.

In his second insurance claim, Arner alleged that his new snowblower, purchased after the first burglary in early December, along with several other items were stolen. In an attempt to substantiate that he had purchased a new snowblower, Arner repeatedly asserted that he had purchased it from the Ideal Lawnmower Shop. At trial, the prosecution called the owner of Ideal Lawnmower Shop as a witness, and he testified that he kept meticulous records of the sales of snowblowers and that based on those records Arner did not purchase a new snowblower from that shop during the time Arner said he did. That testimony, plus the claim report Arner signed and filed stating that the snowblower was stolen, were strong evidence that Arner knew the second insurance claim was false and that he intended to defraud his insurance company. In addition, there was testimony from which the jury could infer that the VCR, the tires and wheels and the snowmobile helmets were not stolen during the second burglary nor ever existed.

In addition, as the State suggests, Arner's lengthy, confusing and often contradictory testimony was ample to discredit his story, which was, after all, the essence of the case. For example, Arner, on direct exam, testified initially that his radial saw was taken during the first burglary but then, after his trial counsel showed Arner his insurance claim letter, he changed his testimony and stated that the saw was taken during the second burglary. Arner's trial counsel's failure to do anything about the evidence concerning Arner's prior conviction was not prejudicial because the State presented substantial other evidence to support its case.

Arner also asserts that his trial counsel's failure to object when the prosecutor allegedly shifted the burden of proof to Arner was ineffective assistance. The questioning which Arner asserts was improper involved the testimony of the insurance claims adjuster who handled Arner's second insurance claim, and proceeded as follows:

Q. And RCA VCR, you also gave coverage on that of approximately 127. What is the item in column 13?

A. That is the amount we hold until he actually replaces the items, his replacement cost on policy we pay him actual cash value up front, and what he actually replaces we include the amount.

Q. *Did he ever prove that he purchased that item for $35?*

A. No.

\* \* \* \* \* \*

Q. Now you indicated in Column 13 of Exhibit 8 that he was eligible for certain benefits totalling $139.35 upon showing replacement of those various items. *Has he ever sent you any proof he has replaced any of those items?*

A. No, he hasn't.

Q. Did he provide any receipt or documentation for any of the items listed in the claim?

A. No.

Q. Did you ask him for such items?

A. Yes. [emphasis added]

Arner argues: (1) the highlighted questions suggested to the jury that Arner had to prove his innocence and (2) that type of questioning is improper, and failure to object is ineffective assistance under *Stephens v. State,* 774 P.2d 60 (Wyo.1989).

In *Stephens,* we reversed Stephens' conviction for indecent liberties because several experts improperly testified that they believed Stephens was guilty. *Id.,* at 76. Because that case was being remanded for potential retrial, we also addressed several issues which we thought might arise again during the second trial. *Id.* One of the issues we addressed as a service to the lower court but not as part of the reasoning for reversal, was an issue concerning the denial of the presumption of innocence through prosecutorial questioning. *Id.,* at 74–76. In dicta, we advised that the prosecutor's questions, asking Stephens why he had not pursued the molester of his child since Stephens testified that he was not the culprit, were improper and that Stephens' trial counsel was remiss in failing to object to these questions.

■ What occurred at Arner's trial is easily distinguishable. Arner, as the insured in his insurance claim, was required to prove to the insurer his replacement cost; and the fact that he did not tender proof of these replacement costs was probative of the falsity of his insurance claims. The testimony is clear that any proof which Arner may have needed to provide involved his insurance claims and had nothing to do with the State's burden in this criminal case. The failure of Arner's trial counsel to object to this line of questioning about proving replacement cost for an insurance claim was not ineffective assistance of counsel.

### B. Plain Error

■ Arner argues separately that the trial court committed plain error by not limiting the prosecutor's questioning of Arner concerning his prior conviction for cocaine distribution. We will not find plain error unless it is demonstrated

> that a clear and unequivocal rule of law has been violated; a substantial right has been denied to [Arner]; and, as a result [Arner] has been materially prejudiced.

*Farbotnik v. State,* 850 P.2d 594, 604 (Wyo. 1993). As we previously discussed when addressing Arner's claim of ineffective assistance of counsel, Arner was not materially prejudiced by the evidence concerning his prior drug distribution conviction because it is not reasonably possible that Arner would have received a more favorable verdict if the evidence had been excluded. *Zabel v. State,* 765 P.2d 357, 362 (Wyo.1988).

### CONCLUSION

Arner has failed to demonstrate that his trial counsel's performance amounted to ineffective assistance of counsel and that the trial court committed plain error by not curtailing the prosecution's questioning concerning Arner's prior conviction.

We affirm.