Glenn Wayman SORENSEN,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–96.

Supreme Court of Wyoming.

June 16, 2000.

Representing Appellant: Sylvia Lee Hackl, Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Hughes, Assistant Appellate Counsel. Argument by Ms. Hughes.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Darin D. Smith, Student Intern. Argument by Mr. Smith.

\* Retired June 2, 2000.

Before LEHMAN, C.J., and THOMAS, MACY,\* GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

A Hot Springs County jury found Glenn Wayman Sorensen guilty of one count of first degree sexual assault. Claiming he was denied effective assistance of counsel, he appeals. We affirm.

### ISSUES

Sorensen presents the following issues for review:

1. Did trial counsel provide ineffective assistance of counsel in the process of jury selection, when he failed to (a) adequately question the panel; (b) object to or have removed a juror who could not hear the evidence; and (c) make an objection or an adequate record for appeal concerning the apparently deliberate exclusion of male jurors, resulting in violation of Appellant's right to due process and equal protection?

2. Did trial counsel provide ineffective assistance of counsel in that he had a conflict of interest from having previously represented the alleged victim on drug charges?

3. Did trial counsel provide ineffective assistance of counsel in his failure to adequately cross-examine the victim of the sexual assault?

### FACTS

Sorensen was charged with one count of first degree sexual assault and tried before a jury on May 14 and 15, 1998. That trial resulted in a mistrial, and the State subsequently filed a Notice of Intention to Retry Jury Trial. Sorensen was tried again, where the following evidence was produced.

On November 19, 1997, Sorensen telephoned the victim, a Thermopolis resident, and invited her to come to his trailer house in Kirby and "party" with him. The victim and Sorensen had partied on several prior occasions. Their "partying" consisted of drinking and doing illegal drugs. After stopping at a liquor store to purchased a bottle of wine, the victim ventured to Sorensen's home. Upon

arriving around 9:30 or 10 p.m., the victim noticed Sorensen had been drinking heavily, and an empty whiskey bottle and empty beer cans cluttered the floor.

The victim testified that, after some time spent drinking, Sorensen pulled out a rusty knife and ordered her to take off her clothes, claiming she "owed him." The victim presumed Sorensen meant she owed him for illegal drugs he had given her in the past for which she had not paid. The victim pleaded with Sorensen not to hurt her and to let her go home, but she proceeded to undress after he hit her on the head. The victim testified that Sorensen then preformed oral sex on her against her will. Sorensen then ordered the victim to preform oral sex on him. The victim asserted that, during the course of the sexual contact, Sorensen was repeatedly hitting her on the head with a closed fist any time she resisted. After Sorensen was unable to become aroused, the victim donned her jacket and shoes, grabbed the rest of her clothes, and left the house sometime between 1:30 and 2:00 a.m. The victim stated she drove home without her eye glasses because Sorensen would not give them back to her.

Friday, November 21, 1997, the victim reported the incident to law enforcement. Later that day, she sought medical treatment for bruising on her hands, face and shins; swelling across the bridge of her nose; and abrasions on her neck. She was given pain killers and muscle relaxers, but no further medical treatment was required beyond an "as needed" basis.

Sorensen testified in his defense. Although he admitted slapping the victim, he claimed he did not strike her until after he failed to become aroused. Thus, it was his theory at trial that, although he may have battered the victim, the incident did not amount to a forcible sexual assault because any battery that occurred did not occur until after the sexual acts were completed. Sorensen also denied threatening the victim with a knife.

After deliberations, the jury found Sorensen guilty of one count of first degree sexual assault. Judgment and sentence was entered accordingly. This timely appeal followed.

## DISCUSSION

Sorensen's claims of error all revolve upon his claim that counsel was ineffective. The law and standards of ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) were adopted by this court in *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986) and articulated in *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo. 1995):

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State*, 891 P.2d 793, 796 (Wyo.1995); *Starr v. State*, 888 P.2d 1262, 1266–67 (Wyo. 1995); *Arner v. State*, 872 P.2d 100, 104 (Wyo.1994); *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. *Herdt*, at 796; *Starr*, at 1266; *Arner*, at 104; *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias*, an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Starr*, at 1266; *King v. State*, 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State*, 728 P.2d 628, 629 (Wyo.1986); *Frias*, 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of [the] case." *Lower v. State*, 786 P.2d 346, 349 (Wyo.1990).

The burden of proving that counsel was ineffective rests on the defendant, who

must overcome a "strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist v. State,* 737 P.2d 336, 342 (Wyo.1987) (citing *Strickland, supra*); *Dickeson v. State,* 843 P.2d 606, 609 (Wyo.1992). For assistance of counsel to be deemed deficient, the defendant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Dickeson,* 843 P.2d at 609 (quoting *Strickland, supra*). Prejudice to the defense can be shown by demonstrating "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

### Voir dire

■■■ Although Sorensen claims his trial counsel did not adequately question prospective jurors during the voir dire process, nothing leads us to believe trial counsel's questioning was outside the wide range of professionally competent assistance. The purpose of voir dire "is to seek to establish grounds for challenge for cause; assess any individual bias as to each member of the panel; and to arrive at a determination of the potential jurors' ability to decide a case fairly." *Vit v. State,* 909 P.2d 953, 960 (Wyo. 1996). Because voir dire questioning techniques are diverse, any inadequacy in voir dire questioning must be egregious and obvious to fall below the line of competence. *Arner v. State,* 872 P.2d 100, 105 (Wyo.1994). In performing our review for ineffectiveness, this court does "not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time." *Dickeson,* 843 P.2d at 609 (citing *Strickland, supra*); *Arner v. State,* 872 P.2d at 104.

In voir dire, the district court instructed the attorneys to avoid asking questions of individual jurors that could be asked of the panel, not to repeat questions that had been asked by opposing counsel, and not to argue the law or the facts during jury selection. *See* W.R.Cr.P. 24(c). The prosecutor was given the first opportunity to examine for cause, and defense counsel was allowed to interject questions in the process. Sorensen's trial counsel took advantage of this opportunity several times, especially during individual voir dire in chambers. When the prosecutor completed his examination for cause, defense counsel was permitted to examine for cause.

■■■ Obviously, trial counsel could have asked more questions during voir dire. However, both attorneys were to avoid repeating questions that had already been asked. In addition, defense counsel's questioning followed the prosecutor's thorough examination for cause. Viewing counsel's performance from this perspective, we find nothing improper in his questioning of the panel. As for Sorensen's complaints that defense counsel should have endeavored to remove a number of jurors who eventually sat on the jury, it must be remembered that "[v]oir dire and the exercise of challenging jurors is trial strategy." *Arner v. State,* 872 P.2d at 105. From our review of the record, Sorensen has not shown any error that was so egregious and obvious as to fall below the line of competence.

### Hearing-impaired juror

■■■ Sorensen further complains that trial counsel's failure to secure removal of a hearing-impaired juror evinced ineffective assistance of counsel. During voir dire, the prosecutor asked whether any prospective juror had a mental or physical infirmity that would make it impossible for them to act as a juror. A prospective juror, who was eventually selected to serve on the petit jury, alerted the court that he had a "terrible time hearing." The juror was then asked if there was anything the court could do to make it easier for him to hear, and he agreed to raise his hand to alert the court if he was unable to hear something.

■■■ When seeking reversal based on the inability of a juror to hear evidence, a defendant must demonstrate prejudice, *i.e.,* that

the juror failed to hear material parts of the trial. *Belondon v. City of Casper*, 456 P.2d 238, 242 (Wyo.1969). The juror in this case did alert the court and counsel to his difficulty in hearing. However, reasonable accommodations were made for him to signal the court in the event he was unable to hear the evidence. Nothing in the record indicates the juror ever raised his hand during trial to alert the court that he was unable to hear witnesses, attorneys, or the court. In addition, the record reflects the prosecutor informed two of his witnesses (the victim and the victim's father) that a juror was hard of hearing and requested that the witnesses "speak up." Nothing in the record leads this court to conclude the juror was unable to hear the evidence, and Sorensen therefore has not demonstrated prejudice. Counsel cannot be deemed ineffective on this ground.

### Juror Exclusion

We also reject the claim that counsel was ineffective because he did not object or make an adequate record for appeal concerning the alleged deliberate exclusion of male jurors from the jury panel. Sorensen is correct that the record does not reveal how the parties exercised their allotted nine peremptory challenges. *See* W.R.Cr.P. 24(d)(1) and (e). After questioning by the attorneys and numerous for-cause removals, a panel of 31 potential jurors was passed for cause, 22 women and nine men. Each side then exercised their nine peremptory challenges, leaving a jury of 12 and one alternate. Because these 13 jurors consisted of 12 women and one man, it follows that ten women and eight men were removed by peremptory challenge. As finally composed, the jury consisted of 11 women and one man. Because of these numbers, it is Sorensen's theory that males were systematically excluded from the jury.

It is well established that the Equal Protection Clause forbids the use of peremptory challenges to exclude jurors solely on the basis of their race or gender. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Bueno-Hernandez v. State*, 724 P.2d 1132, 1134 (Wyo.1986); *Espi-*

*noza v. State*, 969 P.2d 542, 547 (Wyo.1998); *Beartusk v. State*, 6 P.3d 138, 142 (Wyo. 2000). "The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." *Batson*, 476 U.S. at 86, 106 S.Ct. at 1717 (quoting *Strauder v. West Virginia*, 100 U.S. 303, 308, 10 Otto 303, 25 L.Ed. 664 (1879)).

Sorensen complains that, because the record is silent as to which side challenged which prospective jurors, defense counsel was guilty of ineffective assistance of counsel. We reject this claim for two reasons. First, numerous courts have employed the rule that, if a *Batson/J.E.B.* claim is not made in a timely fashion, usually before the venire is dismissed, the claim is deemed to be waived. *U.S. v. Romero-Reyna*, 867 F.2d 834, 837 (5th Cir.1989) ("We hold that to be timely, the *Batson* objection must be made before the venire is dismissed and before the trial commences."); *U.S. v. Biaggi*, 909 F.2d 662, 679 (2nd Cir.1990) (acknowledging the "need to resolve a *Batson* claim at the point where prompt corrective action can be taken"); *U.S. v. Abou-Kassem*, 78 F.3d 161, 167 (5th Cir.1996); *U.S. v. Maseratti*, 1 F.3d 330, 335 (5th Cir.1993); *U.S. v. Erwin*, 793 F.2d 656, 667 (5th Cir.1986); *State v. Wilson*, 117 N.M. 11, 868 P.2d 656, 661 (App.1993) (collecting cases); *People v. Mendoza*, 876 P.2d 98, 102 (Colo.App.1994); *Foster v. State*, 548 So.2d 475, 477 (Ala.Crim.App.1987).

In addition, even if the record did reveal how the peremptory challenges were exercised, this court would be hard pressed to find ineffectiveness based on a failure to object to the potential discriminatory exclusion of jurors by gender. In *State v. Wilson*, 868 P.2d at 663–64, the New Mexico Court of Appeals rejected an ineffective assistance of counsel claim based on failure to make a *Batson* challenge. In doing so, the court was unwilling to second guess defense counsel:

> defense counsel might have had reasons related to Defendant's theory of the case for not opposing the prosecutor's use of the State's peremptory challenges....

Alternatively, counsel originally might have been satisfied that the final jury selected was a fair cross-section of the community and that Defendant's chances for an acquittal would not improve with any changes and might instead lessen.

*Id.* at 663. We agree with this reasoning. It reflects great deference to trial counsel, who had an eyewitness view of the venire, in deciding to make, or refrain from making, a *Batson/J.E.B.* challenge. This reasoning also falls in line with this court's statement that voir dire and the exercise of challenging jurors is trial strategy. *Arner v. State,* 872 P.2d at 105. We find no ineffectiveness on this ground.

### Conflict of interest

■ Finally, we address Sorensen's contention that his trial counsel was laboring under a conflict of interest. In a letter attached to one of Sorensen's motions before this court, Sorensen's trial counsel states he previously represented the victim, approximately a year before the sexual interlude giving rise to this case, on charges of driving while under the influence and possession of marijuana and methamphetamine.

■ Where, as here, a constitutional right to counsel exists, there is a correlative right to representation that is free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan,* 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1716–19, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978); *Shongutsie v. State,* 827 P.2d 361, 364 (Wyo.1992). In addressing ineffective assistance claims involving conflicts of interest, this court has examined two general scenarios. The first involves instances where a defense attorney undertakes the joint representation of criminal defendants. For those instances we have "articulate[d] the rule that prejudice will be presumed in all instances of multiple representation of criminal defendants and, in the absence of an appropriate waiver, multiple representation will constitute reversible error." *Shongutsie v. State,* 827 P.2d 361, 367 (Wyo.1992); *Kenney v. State,* 837 P.2d 664, 672–76 (Wyo.

1992); *Calene v. State,* 846 P.2d 679, 687–88 (Wyo.1993); *see also* W.R.Cr.P. 44(c).

The second scenario, the one present in this case, involves the former representation of a witness coupled with current representation of a defendant. The only case from this court addressing the issue is *King v. State,* 810 P.2d 119, 123–24 (Wyo.1991). In that case, King's former paramour, Thompson, was charged with delivery of a controlled substance. While Thompson was in jail, an attorney came to represent her and arranged to get her out of jail and into a hospital for substance abuse treatment. Two other attorneys then handled Thompson's felony charges. In negotiating a plea agreement, Thompson agreed to participate in a sting operation targeting King and to testify against him. At trial, King was represented by the same attorney who arranged to get Thompson out of jail and into treatment. King, aware of his attorney's prior representation of Thompson, objected to this representation and asked the trial court to appoint a new defense attorney. The district court refused, and King was convicted. 810 P.2d at 120–21. This court reversed King's conviction. In addition to concluding that King's counsel was ineffective in failing to interview or secure the testimony of two potential eyewitnesses, this court also concluded the district court abused its discretion in failing to evaluate "King's claim and put into the record the reasons for rejecting King's claim for ineffectiveness of counsel based upon a conflict of interest." 810 P.2d at 124.

On the conflict of interest issue, the *King* court wrote:

*Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 indicated the continuing vitality of the conflict of interest standard formulated in *Cuyler,* 446 U.S. at 345–50, 100 S.Ct. at 1716–19. Under that standard, a defendant who raised no objection at trial must show that an actual conflict of interest adversely affected his lawyer's performance before prejudice is presumed.

To demonstrate a conflict of interest, the appellant may "demonstrate that some plausible alternative defense strategy or tactic might have been pursued ... [and] establish that the alternative defense was

inherently in conflict with the attorney's other loyalties or interests." *Brien v. United States,* 695 F.2d 10, 15 (1st Cir. 1982).

To demonstrate an adverse effect, the "defendant would only have to show that his attorney's conflict reduced his effectiveness." *[State v.] Jenkins,* [148 Ariz. 463] 715 P.2d [716,] 720 [ (Ariz.1986) ]. "[A]dverse effect is a less burdensome requirement than prejudice." *Id.*

*King v. State,* 810 P.2d at 123.

The *King* court also discussed how an actual conflict of interest may arise in a case of former representation. The court summarized King's attorney's dilemma:

> [W]hile we do not know if his representation of King would necessarily be materially limited by his responsibilities with Thompson, "[t]here is a presumption that an attorney receives confidential communications in the course of his representation of a client." *United States v. Shepard,* 675 F.2d 977, 980 (8th Cir.1982). Because "the attorney may misuse confidential information obtained from the former client, or may fail to fully cross-examine for fear of misusing confidential information," *id.* at 979, the reliability of the adversarial process cannot be confidently relied upon.

810 P.2d at 124. In addition, the court noted that both the witness, as a former client, and defendant have interests at stake, and two rules of professional conduct may be implicated, Rules 1.7 and 1.9.[1] 810 P.2d at 123. However, it must be kept in mind that "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 993, 89 L.Ed.2d 123 (1986);

*U.S. v. Gallegos,* 39 F.3d 276, 279 (10th Cir. 1994). Instead, the question is whether counsel was laboring under an actual conflict of interest that adversely affected counsel's performance.

Relying on *King,* Sorensen contends that his conviction should be reversed and the case remanded for a new trial. However, reversal of a conviction is not necessarily the appropriate remedy, and a careful analysis of *King* illustrates this point. In *King,* in addition to concluding the district court abused its discretion by failing to evaluate King's claim of a conflict of interest, this court also concluded that King's counsel was ineffective in failing to interview or secure the testimony of two potential eyewitnesses. *King,* 810 P.2d at 122–23. Because the *King* court made this second conclusion, it was not faced with the question of what the appropriate remedy would be if only the conflict of interest issue existed. In his *King* dissent, Justice Cardine argued, relying on *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981), that the appropriate remedy on the conflict of interest issue was a remand for development of a record. 810 P.2d at 125–26. In this case, because we find no merit in Sorensen's other claims of ineffectiveness, we must determine the appropriate remedy where there exists the potential for an actual conflict of interest.

In *Wood v. Georgia,* the United State Supreme Court remanded to the trial court for an evidentiary hearing to determine if counsel was laboring under an impermissible conflict of interest. 450 U.S. at 273–74, 101 S.Ct. at 1104. The conflict in *Wood* arose from a third party payor situation in which Wood and two other defendants were represented by the same attorney, and this legal

---

1. Those Wyoming Rules of Professional Conduct provide in pertinent part:

**Rule 1.7. Conflict of interest: General rule**
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

**Rule 1.9. Conflict of interest: former client**
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation except that when the former client is a governmental entity, consent is not permitted.

assistance was provided by their employer. The three defendants were convicted of distributing obscene materials and sentenced to periods of probation on the condition they make regular installment payments toward the satisfaction of substantial fines. The defendants failed to make payments, and probation officers moved for revocation of their probations. At their probation revocation hearings, the defendants stated they had expected their employer to pay their fines for them. The defendants' probations were then revoked. 450 U.S. at 262–64, 101 S.Ct. at 1099–1100.

The potential for a conflict of interest in *Wood* arose because the record strongly suggested that the employer was attempting to develop a test case to establish that "adult" establishments may be able to avoid the burden of paying fines imposed on its employees when the employees are arrested conducting business. "To obtain such a ruling, however, it was necessary for [defendants] to receive fines that were beyond their own means and then risk jail by failing to pay." 450 U.S at 267, 101 S.Ct. at 1101. Indications of this apparent conflict were found at various stages. At sentencing, defendants raised no protest about the size of their fines. The defendants subsequently failed to pay even small amounts toward their fines, apparently believing the employer would pay. At the probation revocation hearing, no argument was made to modify the conditions of probation. The Supreme Court thus concluded, "if [defendants'] counsel was serving the employer's interest in setting a precedent, this conflict in goals may well have influenced the decision of the trial court to impose such large fines, as well as the decisions to revoke [defendants'] probations rather than to modify the conditions." 450 U.S. at 268, 101 S.Ct. at 1102. Because of this possibility for a conflict of interest, the *Wood* court concluded that a remand for an evidentiary hearing was required. The Court instructed that the trial court

> hold a hearing to determine whether the conflict of interest that this record strongly suggests actually existed at the time of the probation revocation or earlier. If the court finds that an actual conflict of interest existed at that time, and that there was

no valid waiver of the right to independent counsel, it must hold a new revocation hearing that is untainted by a legal representative serving conflicting interests.

450 U.S. at 274, 101 S.Ct. at 1104.

In *U.S. v. Winkle,* 722 F.2d 605, 611–12 (10th Cir.1983), the United States Court of Appeals for the Tenth Circuit discussed a potential conflict of interest more closely analogous to Sorensen's claim. In that case, Winkle's attorney, Thompson, had previously represented a government witness, undercover agent Cox. During cross-examination of Cox, Thompson asked whether Cox had ever borrowed money from Winkle, which Cox denied. Thompson then approached the bench and informed the court he had personal knowledge Cox had borrowed $350 from Winkle to pay Thompson his fee. This testimony would have helped support Winkle's position that Cox did not pay Winkle $400 for drugs, but as a repayment on loans. The trial judge acknowledged that Thompson was "getting close to some kind of conflict" and, upon the government's request, instructed Thompson to drop the line of questioning. On appeal, the Tenth Circuit Court of Appeals vacated the judgment and remanded for a hearing, in accordance with *Wood v. Georgia,* "to determine whether the conflict of interests, which the record strongly suggests, actually existed and adversely affected defense counsel's performance at the time of trial." 722 F.2d at 611–12.

Comparing Sorensen's case to *Wood* and *Winkle,* we conclude Sorensen is not entitled to a remand for an evidentiary hearing. *See also U.S. v. Alvarez,* 137 F.3d 1249, 1252 (10th Cir.1998); *U.S. v. Bowen,* 788 F.Supp. 528, 530 (D.Kan.1992) ("a hearing is not warranted because defendant has not presented allegations which, if proven, would amount to a conflict of interest"). In both those cases, a conflict of interest adversely affecting the defendant's representation was "strongly suggested" by the record. Here, the record does not strongly, or even remotely, suggest that any confidential information derived from counsel's representation of the victim prevented counsel from fully cross-examining the victim. Although Sorensen makes a

myriad of complaints asserting that counsel was ineffective in cross-examining the victim, neither these arguments nor the record suggests that Sorensen's counsel was hobbled in his cross-examination of the victim. A closer look at Sorensen's claims regarding the cross-examination bears this out.

In his initial brief, Sorensen argues trial counsel "failed to ask [the victim] as to why, if she was feeling threatened, she did not flee while he was removing his clothes. Appellant was a large man at the time, approximately 380 pounds and it is difficult to imagine how the much smaller alleged victim could not have vacated the premises at that point." In addition to being highly speculative, this argument fails to recognize that any questioning on this point may have only served to emphasize the victim's fear as well as her testimony that she had been ordered to remove her clothes at knife point. As such, it clearly evinces a tactical decision on the part of defense counsel. More importantly, this claim in no way suggests that counsel's alleged failure to cross-examine adequately was the result of some ethical dilemma, *i.e.*, that the information was related to confidences reposed in counsel by the victim.

Next, Sorensen complains trial counsel should have explored the victim's assertion that Sorensen asked her to be a prostitute, with Sorensen acting as her pimp. This testimony was elicited by the prosecutor and is not particularly helpful, and probably extremely damaging, to Sorensen. Thus, it appears to be a tactical decision on the part of defense counsel to avoid highlighting this testimony for the jury. Again, more importantly, nothing indicates this testimony involves a confidential matter relating to counsel's prior representation of the victim.

Finally, Sorensen contends that counsel should have asked why the victim did not leave when, upon her arrival at Sorensen's home, she noticed Sorensen was intoxicated. Again, this only pertains to the facts of the crime, and no confidential matters between the attorney and the victim are implicated.

We turn to Sorensen's reply brief. There, Sorensen lists questions he believes should have been asked of the victim. These questions generally concern the victim's problems with truthfulness, her addiction to prescription drugs, and her difficulty in deciphering right from wrong. Prior to the victim testifying, each of these topics was explored during the testimony of the victim's father, the first witness called in this case. Although Sorensen argues these areas should have been explored on cross examination of the victim, he acknowledges that such exploration may have been fruitless. His reply brief provides: "At best, [the victim] would have conceded at least some of these points; at worst, she would have denied everything, and trial counsel should then have comprehensively pointed out her denials and the contradictions in testimony during closing." Again, this observation only serves to underscore that this was a tactical decision on the part of defense counsel. By not cross-examining the victim on these points, defense counsel, in closing argument, could rely on the uncontradicted testimony of the father to impugn the victim's credibility. Closing argument reveals that defense counsel did just that, relying heavily on the father's testimony in denigrating the victim's credibility. We cannot second guess this tactical decision. More importantly, as it pertains to the conflict of interest issue, none of the alleged unexplored areas are related to a confidential communication between defense counsel and the victim.

Although Sorensen makes no complaint that questioning concerning victim's previous crimes was deficient, our review of the record satisfies us that trial counsel's questioning on these matters in no way suggests the existence of a actual conflict of interest that adversely affected counsel's performance. As previously mentioned, counsel represented the victim, approximately one year prior to the sexual interlude giving rise to this case, on charges of driving while under the influence and possession of marijuana and methamphetamine. At the time of trial, the victim was still on probation for those charges. On direct examination, the victim admitted she had been less than honest with investigators, neglecting to tell them

she had taken wine to Sorensen's home, consumption of alcoholic beverages being a violation of the terms of her probation. On cross-examination, defense counsel questioned the victim about the charges giving rise to her probation, *i.e.,* the DWUI and possession charges. In addition, counsel asked the victim if, for the charges upon which she was convicted, she had received the drugs from Sorensen, to which she responded "no." Thus, it is apparent that counsel did not shy away from questioning the victim about these prior crimes. Indeed, the questioning on these matters appears to help Sorensen's cause. We find no suggestion of a conflict of interest based on these facts.

The foregoing discussion disposes of two of Sorensen's claims. First, we decline to remand for an evidentiary hearing. Nothing in the record "strongly suggests" that a conflict of interest actually existed that adversely affected Sorensen's representation; we find no suggestion that "some plausible alternative defense strategy or tactic might have been pursued ... [that] was inherently in conflict with the attorney's other loyalties or interests." *King v. State,* 810 P.2d at 123 (quoting *Brien v. United States,* 695 F.2d at 15).

Second, we conclude trial counsel's cross-examination of the victim was well within the wide range of professionally competent assistance. In addition to the previously discussed complaints, Sorensen asks this court to compare the transcript of the cross-examination of the victim from the first trial (which resulted in a mistrial) with the transcript in this case. He argues that such a comparison will reveal that counsel in the second trial was ineffective in cross-examining the victim. However, because the same attorney represented Sorensen in both cases, it is apparent that any change in cross-examination from the previous trial was a tactical decision. Finally, although Sorensen makes numerous complaints about the inadequacy of cross-examination of the victim,

> there is no trial in which even experienced counsel is entirely satisfied with all the tactics employed in the heat of battle. Indeed, the blessing of perfect hindsight frequently discloses avenues which should have been explored or questions that should have been left unasked. No two trial lawyers approach the same case from the same perspective, nor do they always develop the same trial strategy; thus what to one appears to be sound, may to another appear unwise. A reviewing court must always be alert to distinctions between disagreement over tactic and valid complaints of inadequate counsel.

*Myrick v. Maschner,* 799 F.2d 642, 647 (10th Cir.1986).

The Judgment and Sentence entered by the district court is affirmed.