2001 WY 105

**Joseph REYNA, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 00–193.**

Supreme Court of Wyoming.

Nov. 6, 2001.

Lynn Boak, Cheyenne, WY, Representing Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Devon O'Connell Coleman, Interim Director, Prosecution Assistance Program; and Ryan Patrick Healy, Student Intern, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] At a change of plea hearing, the appellant, Joseph Reyna, pled guilty to one count of forgery, in violation of Wyo. Stat. Ann. § 6–3–602(a)(iii) (LexisNexis 2001), and one count of conspiracy to commit forgery, in violation of Wyo. Stat. Ann. §§ 6–1–303(a) and 6–3–602(a)(i) (LexisNexis 2001), both felonies. He was sentenced to consecutive terms of five to ten years on each charge. After sentencing, the district court denied the appellant's motion to withdraw his guilty pleas. This appeal is from the judgment and sentence and from the denial of the motion to withdraw his guilty pleas.

[¶ 2] We affirm.

## ISSUES

[¶ 3] There are four issues presented for review:

1. Did the district court violate W.R.Cr.P. 11 in its advisement of the elements of a conspiracy?

2. Did the district court violate W.R.Cr.P. 11 in allowing the appellant to waive a presentence investigation report (PSI)?

3. Was the appellant denied effective assistance of counsel in entering his guilty pleas?

4. Did the district court abuse its discretion in denying the appellant's motion to withdraw his guilty pleas?

## PROCEDURAL BACKGROUND

[¶ 4] The probable cause affidavit attached to the Information filed in this case alleges that in December of 1999, the appellant and Juan Martinez forged seven checks totaling more than $10,000.00 on the account of Lowell Luebke. Upon his arrest, the appellant filed an affidavit of indigency and a public defender was appointed to represent him. It is disputed in the record whether a

preliminary hearing was held or waived.[1] At any rate, the appellant was bound over for trial in the district court on both charges.

[¶ 5] At his district court arraignment, the appellant entered pleas of not guilty and moved under W.R.Cr.P. 21.1(a) for peremptory disqualification of the district judge. The case was then assigned to a different district judge. At a change of plea hearing on May 17, 2000, the appellant entered pleas of guilty to both charges and was sentenced as set forth above. The pleas were the result of a limited plea agreement in which the State's only concessions were an agreement not to file additional charges against the appellant and to proceed without a presentence investigation.

[¶ 6] The appellant's trial counsel filed a Notice of Appeal on June 9, 2000. During the pendency of the appeal, the appellant filed a Motion to Withdraw Plea in the district court. This Court entered an Order Granting Motion to Stay Appeal, remanding the case to the district court for resolution of that motion. The district court heard the motion on November 13, 2000, and denied it on November 30, 2000. That denial, in addition to the original judgment and sentence, is the basis for this appeal.

### DID THE DISTRICT COURT VIOLATE W.R.CR.P. 11 IN ITS ADVISEMENT OF THE ELEMENTS OF A CONSPIRACY?

[¶ 7] W.R.Cr.P. 11 sets forth the procedures that must be followed for acceptance of a plea by a criminal defendant. The rule is lengthy and complex. Pertinent to the present discussion are section (b), which describes the advisements that must be given to the defendant, section (d), which requires the court to determine the voluntariness of the plea, section (e)(7), which prohibits waiver of a presentence investigation by plea agreement, section (f), which requires the court to determine the accuracy of the plea by inquiring into the factual basis, and sec-

tion (h), which allows harmless errors to be disregarded.

[¶ 8] The appellant's first contention is that the district court's colloquy with the appellant was insufficient to establish that the pleas were voluntary or that there was a factual basis for the pleas. He relies on *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (*quoting* F.R.Cr.P. 11, Notes on Advisory Committee on Criminal Rules), for the proposition that the judge must determine " 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' " Specifically, the appellant argues that, conspiracy being a specific intent crime, it was improper for the district court to infer that element from the following exchange between the district court and the appellant:

THE COURT: Mr. Reyna, how do you plead to Counts I and II of the Information that's on file in this matter?

THE DEFENDANT: Guilty.

THE COURT: Were you in Laramie County on or about December 2 of 1999?

THE DEFENDANT: Yes.

THE COURT: And did you have a plan with one or more people to commit forgery?

THE DEFENDANT: Yes.

THE COURT: Was that person Juan Martinez?

THE DEFENDANT: Yes.

THE COURT: Were you also in Natrona [sic] County on December 17 of 1999?

THE DEFENDANT: Yes.

THE COURT: Did you issue checks on an account that did not belong to you?

THE DEFENDANT: Yes.

THE COURT: Did you write checks on an account?

THE DEFENDANT: Yes.

---

1. The record contains a Waiver of Preliminary Hearing dated March 8, 2000, signed by the appellant and his attorney. However, there is a docket entry in the County Court (now established as Circuit Court) file for a preliminary hearing held on the same date. The State's appellate brief says that the preliminary hearing was waived. The appellant's brief and an affidavit of his trial counsel both assert that a preliminary hearing was held, and counsel refers to conversations that occurred at or after the hearing. We conclude that the preliminary hearing did take place.

THE COURT: Was that Mr. Luebke's account?

THE DEFENDANT: Yes.

THE COURT: Did you have his permission to do that?

THE DEFENDANT: No.

THE COURT: Does the State accept those factual recitations?

[PROSECUTING ATTORNEY]: Yes, Your Honor. And I believe you did get in the fact that it was in Laramie County, Wyoming.

THE COURT: Do you agree with that, Mr. Reyna?

THE DEFENDANT: Yes.

THE COURT: On both counts?

THE DEFENDANT: Yes.

■ [¶ 9] We have adopted the following standard of review for cases involving the acceptance of a guilty plea:

> The procedure utilized to accept a guilty plea is reviewed by this court as a whole. *Smith v. State*, 871 P.2d 186, 187 (Wyo. 1994). "Our inquiry determines if the district court *sufficiently* described the nature of the charges, including the possible penalties; informed the defendant of the right to representation; informed the defendant of the rights waived by a guilty plea; and obtained a factual basis for the plea." *Mehring [v. State]*, 860 P.2d [1101] at 1106 [ (Wyo.1993) ] (emphasis added). These procedural requirements are intended to assure that the individual facing the criminal charges is not misled into an unintentional waiver of substantial rights. *Id.*

*McCarty v. State*, 883 P.2d 367, 372 (Wyo. 1994). We look to the totality of the circumstances to determine the voluntariness of a plea. *Mehring v. State*, 860 P.2d 1101, 1108 (Wyo.1993).

[¶ 10] At the change of plea hearing in the instant case, the district court reviewed with the appellant all of the following:

1. The terms of the plea agreement.

2. The appellant was not under the influence of an alcoholic beverage, drug, or medication, he did not suffer from a mental disability or learning disorder, and he had no physical problems or distractions.

3. The appellant had reviewed the Information.

4. The nature of the charges.[2]

5. The potential penalties.

6. The rights waived by a guilty plea.[3]

7. The plea agreement did not restrict sentencing, and the appellant could be sentenced to the maximum penalty allowed by law.

8. The pleas were made of the appellant's own free will.

9. The appellant had discussed the matter "fully and completely" with his attorney and he was satisfied with that attorney's representation.

10. The appellant had no questions he wished to ask his attorney before pleading.

11. If the appellant pled guilty, he would be required to answer questions concerning the crimes.

12. The amount of restitution.

13. There was a factual basis for the pleas.

[¶ 11] This list reveals the immediate circumstances under which the district court accepted the factual basis for the conspiracy plea. The appellant's contention that there was insufficient discussion of the specific intent element of conspiracy could implicate either his understanding of the nature of the charge (# 4) or the factual basis for the

---

**2.** Referring to the Information, the district court said:

> This document contains two counts. Count I alleges that on December 2 of 1999 you conspired with one or more people to commit a crime, specifically forgery. Count II is alleged to have occurred on December 17 of 1999. This allegation is that you committed a specific crime of forgery by uttering—by issuing a check on the account of one Lyle Luebke without that person's permission.

**3.** Specifically, the district court detailed the right to persist in a not guilty plea, the right to a speedy trial, the right to a jury trial, the right to a unanimous verdict beyond a reasonable doubt, the right to be represented by counsel, the right to confront witnesses, the right to present and subpoena witnesses, the right to testify or to remain silent, the right to the presumption of innocence, and the right to appeal.

charge (# 13). The appellant's appellate brief commingles these arguments.

[¶ 12] These immediate circumstances do not, however, tell the whole story. The change of plea hearing did not take place in a vacuum. The appellant is an experienced criminal, with three previous penitentiary sentences for felony convictions, two for forgery and one for theft. *See Kaldwell v. State,* 908 P.2d 987, 992–93 (Wyo.1995). He was represented by an experienced public defender who reviewed the evidence and plea options with him. *See McCarty,* 883 P.2d at 374. There was a preliminary hearing. The appellant, himself, raised the idea of waiving the presentence investigation report because he feared the judge would learn that he "may be wanted" in Nebraska "for the same thing not as much money." These circumstances indicate that the appellant made a voluntary plea with a full understanding of the nature of the charges.

[¶ 13] The appellant does not contest that a forgery or forgeries occurred or that there was a sufficient factual basis presented for that crime. His contention is that the factual basis for conspiracy was inadequate because his specific intent—the agreement that a crime be committed—has to be inferred from other statements.[4] We disagree. The appellant replied, "Yes," when asked, "And did you have *a plan with one or more people to commit forgery.*" (Emphasis added.) Certainly it does not require much of an inference to conclude that "a plan with one or more people to commit forgery" is substantively the same as "agrees with one (1) or more persons that they ... will commit [forgery]."[5] Wyo. Stat. Ann. § 6–1–303(a).

[C]omplete descriptions of the elements are not mandatory in accepting a plea un-

der [Rule 11]. *See* W.R.Cr.P. 11(b). The courts of our land do not function with scripts requiring each participant to perform his or her specific part in the same manner on each occasion. We should never mistake the presence of the printed or spoken word for comprehension. A ritualistic expression of verbiage, complete with legal terminology and excess, may provide a comfortable layer of support for technically demanding members of the bar, but would provide little real assurance that the accused actually understands what is about to be accomplished.

*Mehring,* 860 P.2d at 1108–09. *See also United States v. Marks,* 38 F.3d 1009, 1011 (8th Cir.1994), *cert. denied,* 514 U.S. 1067, 115 S.Ct. 1700, 131 L.Ed.2d 562 (1995).

[¶ 14] W.R.Cr.P. 11(f) does not require proof beyond a reasonable doubt that a defendant who pleads guilty is actually guilty. *United States v. Webb,* 433 F.2d 400, 403 (1st Cir.1970), *cert. denied,* 401 U.S. 958, 91 S.Ct. 986, 28 L.Ed.2d 242 (1971); *McCoy v. United States,* 363 F.2d 306, 308 (D.C.Cir. 1966). The rule's standard is much lower than that:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

W.R.Cr.P. 11(f). In applying this rule, the judge need not rely solely on the statements of the defendant, but may draw inferences from all the facts and circumstances surrounding the crime. *Rude v. State,* 851 P.2d 15, 17–19 (Wyo.1993). We cannot say that, in the instant case, there were insufficient facts and circumstances from which the district court could satisfy itself of a factual basis for the conspiracy plea.

---

4. Wyo. Stat. Ann. § 6–1–303(a) provides as follows:

   A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

5. Wyoming has adopted the unilateral theory of conspiracy under Wyo. Stat. Ann. § 6–1–303(a), which means that the State need prove the

"guilty mind" only of the defendant, not the co-conspirator. *Miller v. State,* 955 P.2d 892, 896–98 (Wyo.1998). The word "agrees" in the statute is not used in its contract sense. *But see Palato v. State,* 988 P.2d 512, 513–16 (Wyo.1999), where the bilateral theory of conspiracy is adopted under Wyo. Stat. Ann. § 35–7–1042 (LexisNexis 2001). The latter statute is in the Wyoming Controlled Substances Act rather than the criminal code.

[¶ 15] Since we conclude that the district court complied with the mandates of W.R.Cr.P. 11 in the matters set forth above, we need not consider a harmless error analysis under section (h) of the rule.

## DID THE DISTRICT COURT VIOLATE W.R.CR.P. 11 IN ALLOWING THE APPELLANT TO WAIVE A PRESENTENCE INVESTIGATION REPORT (PSI)?

[¶ 16] W.R.Cr.P. 11(e)(7) provides that a "presentence investigation may not be waived by plea agreement for any felony." Despite the use of the word "may," this clearly is a mandatory provision. *See Board of County Com'rs of Fremont County v. State ex rel. Miller*, 369 P.2d 537, 542 (Wyo. 1962) and *Mayor v. Board of Land Com'rs*, 64 Wyo. 409, 192 P.2d 403, 411 (1948). The appellant does little but raise this issue in his appellate brief, citing no authority for the appropriate remedy for a breach, and even admitting that it was the appellant, himself, who wanted to waive the PSI. He does suggest three purposes for the rule: (1) to keep criminal defendants from hiding their lengthy records; (2) to make sure defendants are familiar with their prior record; and (3) to give judges information upon which to base appropriate sentences.

[¶ 17] Even if we accept these purposes, however, they are of little assistance to the appellant. Available to the district court at sentencing, and to counsel before sentencing, was a 1992 PSI. The appellant testified that he was incarcerated, apparently for the crime that generated that PSI, until 1997. Further, he did not want a new PSI, for fear the district judge would learn of a similar crime in Nebraska. The State was aware of the appellant's "activities" since the date of the 1992 PSI.

[¶ 18] Undoubtedly, the intent of W.R.Cr.P. 11(e)(7) is that a new PSI be done whenever a felon is sentenced after a plea agreement.[6] While the "letter of the law" may have been violated in the instant case, the district court and counsel did abide by its spirit. It might even be said, since the 1992

PSI was used, that there was no violation of the rule at all, especially given the information available as to the appellant's activities since that date. At most, this was a slight "variance from the procedures required by this rule which [did] not affect substantial rights" of the appellant, and we may disregard it. W.R.Cr.P. 11(h). There was no miscarriage of justice. *See Bird v. State*, 901 P.2d 1123, 1128–30 (Wyo.1995), *cert. denied*, 531 U.S. 907, 121 S.Ct. 253, 148 L.Ed.2d 183 (2000). We conclude that the district court did not violate W.R.Cr.P. 11 in any substantial manner in proceeding to sentencing with the 1992 PSI and other available information.

## WAS THE APPELLANT DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN ENTERING HIS GUILTY PLEAS?

[¶ 19] Wyoming has a well-established and oft-repeated standard for reviewing claims of ineffective assistance of counsel:

"When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State*, 891 P.2d 793, 796 (Wyo.1995); *Starr v. State*, 888 P.2d 1262, 1266–67 (Wyo. 1995); *Arner v. State*, 872 P.2d 100, 104 (Wyo.1994); *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt*, at 796; *Starr*, at 1266; *Arner*, at 104; *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias*, an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Starr*, at 1266;

---

**6.** It seems odd to make this restriction applicable only to cases where the PSI is waived as part of a plea agreement. The purposes of a PSI are the same in any case. W.R.Cr.P. 32(a) provides that a PSI *shall* be conducted in *every* felony case, and that this requirement may not be waived, although, with the parties' consent, the court may allow the report to be filed after sentencing.

*King v. State,* 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986); *Frias,* 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to 'render such assistance as would have been offered by a reasonably competent attorney' and that 'counsel's deficiency prejudiced the defense of [the] case.' *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990). 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064."

*Chapman v. State,* 2001 WY 25, ¶ 6, 18 P.3d 1164, 1168–69 (Wyo.2001) (*quoting Grainey v. State,* 997 P.2d 1035, 1038–39 (Wyo.2000)). This test has been specialized for cases where entry of a guilty plea is challenged on the basis of ineffective assistance of counsel:

When an attorney has allegedly misadvised his client with respect to the entry of a guilty plea, a determination must be made of whether the decision to plead and forego the defense of his case resulted in prejudice to the client. That determination involves two interrelated questions: whether, in the absence of counsel's error, the recommendation of a reasonably competent attorney concerning the plea would differ from that given; and whether, absent the error, the outcome of a trial would have been more advantageous to the client than the result of his plea. *Hill [v. Lockhart],* 474 U.S. [52] at 59–60, 106 S.Ct. [366] at 370–71 [88 L.Ed.2d 203 (1985)]. The defendant may also establish the necessary prejudice by proof of circumstances indicating that, in deciding whether or not to plead guilty, he placed special emphasis on the challenged aspect of his attorney's advice. He must suggest to the reviewing court a plausible reason why, had his representation been as he claims it should have been, he would have chosen to forsake the benefits of his plea agreement for the risks of trial. *Id.; see also Worthen*

[v. Meachum], 842 F.2d [1179] at 1184 [ (10th Cir.1988) ].

*Lower v. State,* 786 P.2d 346, 349 (Wyo.1990); *see also Brock v. State,* 981 P.2d 465, 469 (Wyo.1999). The burden of proving that counsel was ineffective rests on the appellant. *Sorensen v. State,* 6 P.3d 657, 660 (Wyo.2000), *cert. denied,* 531 U.S. 1093, 121 S.Ct. 818, 148 L.Ed.2d 702 (2001) (*quoting Frias v. State,* 722 P.2d 135, 145 (Wyo.1986)).

[¶ 20] The appellant's brief contains the following paragraph generally damning trial counsel's performance:

The right to assistance of counsel is guaranteed by the Sixth Amendment to the Constitution, U.S.C.A. Const. Amend. 6, and by Art. 1, § 10 of the Wyoming Constitution. Both contemplate something more than a perfunctory defense or the appearance at counsel table of a warm body and nothing more. Effective assistance of counsel also requires that counsel act in the Defendant's best interests, and that counsel not become an advocate for the prosecution. Where a Defendant is threatened, coerced and intimidated into pleading guilty, and when his attorney will not explain and reveal evidence to which the Defendant is entitled, his attorney clearly is acting as an advocate for the prosecution rather than for the Defendant.

At the hearing on his motion to withdraw guilty pleas, the appellant testified under oath as to the following specific allegations of ineffectiveness of counsel:

1. The appellant decided to plead guilty, then changed his mind, then pled guilty anyway because he "felt intimidated by" his court-appointed counsel.

2. Counsel did not review with him what would occur in the change of plea hearing and the questions that would be asked.

3. The appellant did not tell the district court of the intimidation by his attorney because he was tired of arguing with her.

4. Counsel did not "do her job correctly" in trying to get the appellant a deal with the district attorney's office.

5. Counsel either failed to find out what evidence the State had against the

appellant or she refused to divulge it to him.

6. Counsel threatened to have the appellant sent to the State Hospital if he did not plead guilty.

7. The appellant told the district court he was satisfied with his attorney's representation because he was intimidated by the attorney.

8. Counsel did not explore the appellant's defenses to the conspiracy charge, specifically his alcohol and drug problems.

9. Counsel either failed to find out what other charges the State planned to bring against the appellant or refused to divulge that information to him.

10. Counsel never explained to the appellant what a conspiracy is.

[¶ 21] The State's response to these allegations consists of three documents: an affidavit from the appellant's trial counsel, a letter from trial counsel to the appellant dated May 4, 2000, and a letter from the appellant to trial counsel on the same date. Pertinent information from those documents includes the following:

1. Trial counsel has over five years experience as a public defender.

2. Trial counsel met with the appellant very soon after being appointed.

3. At their first meeting, the appellant expressed a desire to plead guilty, but he wanted to have a preliminary hearing to see if Juan Martinez was going to be charged.

4. The appellant asked trial counsel to try to work out a plea bargain for a stipulated three to five year sentence, but the district attorney refused due to the appellant's lengthy criminal record.

5. Trial counsel attempted numerous times to work out a deal for a specified term of years, to no avail, and this information was relayed to the appellant.

6. The appellant still wished to plead guilty, even without a plea agreement.

7. Trial counsel learned of the following evidence against the appellant, and informed the appellant of its existence:

a. The appellant worked for the victim.

b. Juan Martinez confessed to the police that he had cashed several checks for the appellant.

c. One of the checks was actually made payable to the appellant.

d. The appellant had prior convictions for forgery and had been imprisoned in Nebraska for "forgery and fraud type offenses."

e. There was some evidence that the word "hundred" was misspelled on these checks and on other checks for which the appellant had been convicted.

8. Because the appellant wished to plead guilty, trial counsel advised him first to plead not guilty, so a different sentencing judge could be obtained, the present judge being the same judge who had sentenced him on his most recent prior conviction.

9. When the appellant voiced some concerns about pleading guilty, trial counsel advised him that he should plead guilty because, by taking responsibility, he would receive a lesser sentence.

10. Trial counsel believed the evidence against the appellant to be overwhelming.

11. The State agreed to waive the PSI at the appellant's request, and also agreed not to file additional forgery charges on new checks it had received.

12. The appellant could not understand why trial counsel would not take herself off his case because he had lots of attorneys take themselves off his cases.

13. In his letter, the appellant states, "I will have to admit that you are a good attorney and I would like you to finish this case for me as I said."

[¶ 22] In addition to considering the above information, the district court also reviewed the transcript of the change of plea hearing, which contained the following dialogue:

THE COURT: Apart from that plea agreement, has anybody promised you anything or threatened you with anything in order to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you entering this plea of your own free will?

THE DEFENDANT: Yes.

THE COURT: Have you discussed this matter fully and completely with [your court-appointed counsel]?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with her representation of you in this matter?

THE DEFENDANT: Yes.

THE COURT: Before I go any further, do you have any questions that you would like to ask her? I can arrange it so you can ask those separately or confidentially, if necessary.

THE DEFENDANT: No, Your Honor.

█ [¶ 23] Based on everything in the record and everything presented at the hearing, the district court concluded that there was "little or no doubt" of the adequacy of trial counsel's representation of the appellant. We agree. The appellant has failed to meet his heavy burden of overcoming the strong presumption of effectiveness. To a large extent, this is simply a credibility issue, and we are not inclined to second-guess the district court in that regard.

[¶ 24] Neither of the two prongs of the *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) test has been met. While trial counsel could have been more patient, it is clear from the record that she was dealing with a client who was more than ordinarily demanding. What appears to have been a personality conflict did not rise to deficient representation. Further, the appellant has not proven what prejudice he suffered as a result of trial counsel's representation. Given his record, it certainly is not surprising that the district attorney would not agree to a light sentence, and it is not surprising that the district judge gave him substantial consecutive sentences.

█ [¶ 25] One particular issue deserves additional mention. The appellant claims that trial counsel failed to investigate or present two possible defenses: lack of specific intent and intoxication. However, there is nothing in the record to indicate that either of these defenses was available to the appellant. A hearing was held in the district court on the appellant's motion to withdraw his guilty pleas. The appellant presented no evidence at that hearing that he had no specific intent either to agree that a forgery would be committed or that the forgery was done with the intent to defraud. As to the defense of intoxication, the only evidence in the record is that the appellant answered "yes" to his attorney's question, "Did you have any alcohol or drug problems at the time that you were charged with these crimes?" There is nothing to show the extent of the appellant's alcohol or drug problems, if they existed, or that they contributed in any way to the commission of the crimes. Counsel is not ineffective for failing to raise a defense for which there is no evidentiary support. *Barron v. State,* 819 P.2d 412, 416 (Wyo.1991); *Munden v. State,* 698 P.2d 621, 624 (Wyo.1985).

[¶ 26] The idea that the appellant should plead guilty did not come from trial counsel, but from the appellant. He was not tricked or threatened into making that decision. The fact that trial counsel concurred with the appellant's assessment of the case does not mean she was ineffective. The appellant has not shown that a different attorney would have advised him any differently.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEAS?

█ [¶ 27] We have recently reiterated the standard by which a district court determines whether to grant a motion to withdraw a guilty plea after sentencing and the standard by which we review a denial of such a motion:

W.R.Cr.P. 32(d) provides that if a motion to withdraw a plea is made after sentencing, a plea "may be set aside only to correct manifest injustice." "Manifest injustice" contemplates a "situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." *McCarthy v. State,* 945 P.2d 775, 776 (Wyo.1997). It is, in part, intended to address " ' "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsis-

tent with the rudimentary demands of fair procedure." " *United States v. Blackwell,* 127 F.3d 947, 956 (10th Cir.1997) (*quoting United States v. Todaro,* 982 F.2d 1025, 1028 (6th Cir.), *cert. denied,* 508 U.S. 943, 113 S.Ct. 2424, 124 L.Ed.2d 645 (1993) and F.R.Cr.P. 32(d)). The party seeking to withdraw his pleas bears the burden of demonstrating manifest injustice. *State v. McDermott,* 962 P.2d 136, 139 (Wyo.1998). Justification for this heightened standard for withdrawal of a plea after sentencing is based in the

> "practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

*Id.* at 138 (*quoting Hicklin v. State,* 535 P.2d 743, 749 (Wyo.1975) and *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir. 1963)) (emphasis in original).

A district court has discretion in determining whether a party has proved manifest injustice. Absent an abuse of that discretion, we will not disturb the district court's determination. *McDermott,* 962 P.2d at 138. A district court's decision to deny a motion to withdraw a plea "will not be reversed for an abuse of discretion so long as the district court reasonably could conclude as it did." *Nixon v. State,* 4 P.3d 864, 869 (Wyo.2000). *Browning v. State,* 2001 WY 93, ¶¶ 27–28, 32 P.3d 1061, 1069–70 (Wyo.2001).

[¶ 28] In the instant case, the appellant's motion to withdraw pleas is premised upon

the three arguments previously discussed herein. Since we have already concluded that W.R.Cr.P. 11 was not violated by the district court's advisements or by its proceeding to sentencing on the basis of the 1992 PSI, and that the appellant's trial counsel was not ineffective, the appellant has failed to show such manifest injustice as would require the district court to have allowed him to withdraw his pleas.

[¶ 29] The judgment of the district court is affirmed in all respects.