2002 WY 126

**Guy Wayne BECKER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 01–48, 01–49, 01–50.**

Supreme Court of Wyoming.

Aug. 27, 2002.

Mary Guthrie, Cheyenne, Wyoming, Representing Appellant. Argument by Ms. Guthrie.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; T. Alan Elrod, Assistant Attorney General; Theodore E. Lauer, Prosecution Assistance Program; and Crystal S. Swanson, Student Intern, Representing Appellee. Argument by Ms. Swanson.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Guy Wayne Becker (Becker) pleaded nolo contendere to four counts of second-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–303(a)(v) (LexisNexis 2001) and one count of third-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–304(a)(iii) (LexisNexis 2001). On appeal, Becker claims that he was mentally ill when he entered the pleas and that his trial coun-

* Chief Justice at time of oral argument.

sel provided ineffective assistance by failing to have him evaluated by a mental health professional, permitting him to enter his pleas in the first instance and then not attempting to have the pleas withdrawn prior to sentencing. We find that Becker was provided with effective assistance of counsel and affirm.

## ISSUES

[¶ 2] Becker sets forth the following statement of the issues:

Whether appellant Guy Becker was denied effective assistance of counsel because:

A. His attorney did not have his mental condition evaluated.

B. His attorney permitted him to plead nolo contendere only hours after he had been released from the hospital because of a drug overdose.

C. His attorney did not move to have his pleas withdrawn prior to sentencing.

The State responds with a statement of the issues from its perspective:

I. Did appellant receive effective assistance of counsel when the record directly contradicts his claims that his counsel failed to pursue a motion to suspend proceedings and for a mental evaluation of appellant?

II. Did appellant receive effective assistance of counsel when he knowingly, intelligently and voluntarily entered his pleas of nolo contendere?

III. Did appellant receive effective assistance of counsel when there was no fair and just reason for withdrawal of his nolo contendere pleas before sentencing?

## BACKGROUND

[¶ 3] In case number 01–50, Becker was charged with four counts of second-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–303(a)(v). The charges were based on allegations that Becker had inflicted sexual intrusion on his granddaughter over a period

of years when the victim was between the ages of four and seven. A three-day trial was held between March 14 and March 16, 2000. The jury was unable to reach a verdict, and the district court declared a mistrial. Subsequently, a new trial was scheduled for August of 2000.

[¶ 4] While awaiting retrial, Becker was free on an appearance bond. During the interregnum between the mistrial and the new trial, Becker engaged in sexual activity with two other minors that would form the basis of three additional charges. Accordingly, a bench warrant for his arrest was issued on August 17, 2000, and Becker taken into custody that afternoon.

[¶ 5] The next morning, August 18, 2000, Becker and his counsel appeared before the district court for a scheduled hearing. Initially, the hearing had been scheduled for the entry of a guilty plea. However, Becker's counsel informed the court that after his arrest the night before, there was concern that Becker may have overdosed on Valium in an apparent suicide attempt. Becker was taken to the hospital, where he was forced to regurgitate the contents of his stomach. Accordingly, counsel expressed concern about Becker's competency to proceed with either trial or a plea. Counsel requested a continuance of the trial scheduled for August 21 and filed a motion to suspend the proceedings pending a mental health evaluation of Becker. The district court responded by noting that more information was needed about whether or not Becker had, in fact, attempted suicide and recessed the hearing to allow the parties to investigate.

[¶ 6] Meanwhile, the State filed two additional Informations against Becker on the same day. The first, case number 01–48, charged Becker with two counts of second-degree sexual assault for inflicting sexual intrusion on a victim who was less than twelve years old. The second, case number 01–49, charged Becker with one count of third-degree sexual assault for inflicting sexual contact on a minor victim. All three charges arose out of incidents occurring after the mistrial.

[¶ 7] The district court resumed the hearing late in the afternoon on August 18, 2000.

No further mention of Becker's alleged suicide attempt, his mental capacity, or the motion to suspend the proceedings for an evaluation was made at this hearing. Instead, Becker, appearing with his counsel, and the State presented a plea agreement to the court. Pursuant to the plea agreement, Becker agreed to plead no contest to: (1) the first two counts of second-degree sexual assault in the case involving his granddaughter in case number 01–50; (2) the two counts of second-degree sexual assault in the first Information filed on August 18 in case number 01–48; and (3) the one count of sexual assault in the third-degree in the second Information filed on August 18 in case number 01–49. In exchange, the State agreed to recommend the sentences for charges within each case be concurrent to each other but would not offer any recommendation on whether the charges in the various cases should run consecutively or concurrently to one another.

[¶ 8] After receiving the details of the plea agreement, the court proceeded to explain them to Becker, who acknowledged that he understood the terms. The court informed Becker of the rights he would be giving up if he pleaded nolo contendere and the potential sentences he faced under the charges. Becker stated that he was not under the influence of any substance or disability that would prevent him from understanding the proceedings. Becker then proceeded to plead no contest to four counts of second-degree sexual assault and one count of third-degree sexual assault. The State provided a factual basis for each of the charges to which Becker pleaded. The district court then questioned Becker to ascertain whether his pleas were voluntary and of his own volition. After finding that a factual basis existed for the pleas to the charges and that the pleas had not been improperly induced or coerced, the district court accepted and entered the pleas.

[¶ 9] The sentencing hearing was held on December 20, 2000. Becker was sentenced to a term of not less than 20 nor more than 40 years on each of the second-degree sexual assault counts in case number 01–50 with the sentences to run consecutively to each other. Becker was also sentenced to 20– to 40–year

terms for the two second-degree sexual assault counts in case number 01–48 with those sentences also to run consecutively to each other. A sentence of not less than 10 nor more than 15 years was imposed on the third-degree sexual assault count in case number 01–49. Each of the sentences in the three cases was imposed consecutively to the sentences from the other cases.

[¶ 10] Becker filed his notice of appeal on January 19, 2001. On January 23, 2001, the Department of Corrections filed a Motion for Ex Parte Order of Transfer seeking authority to transfer Becker from the State Penitentiary to the State Hospital. In a letter accompanying the motion, the warden of the penitentiary stated that Becker was ". . . suffering from severe variant of a major depressive episode. He is severely depressed and suffers from a magnitude of co-morbid cognitive deficiencies." The warden noted that Becker's condition rendered him an acute suicide risk if he was housed with the penitentiary population. A memorandum signed by members of the penitentiary's medical services staff supported the warden's request. On January 25, 2001, the district court authorized Becker's transfer to the State Hospital.

## STANDARD OF REVIEW

[¶ 11] For purposes of our review, a plea of nolo contendere is functionally equivalent to a guilty plea. *Ochoa v. State*, 848 P.2d 1359, 1361 (Wyo.1993). A guilty plea must be "knowing and voluntary." *McCarty v. State*, 883 P.2d 367, 372 (Wyo. 1994) (quoting *Parke v. Raley*, 506 U.S. 20, 28, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992)). "The validity of a guilty plea is tested by determining 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *McCarty* at *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)).

[¶ 12] We recently set forth in detail our standard for reviewing claims of ineffective assistance of counsel and, in particular, the specialized test for claims of ineffectiveness where the entry of a guilty plea is challenged:

Wyoming has a well-established and oft-repeated standard for reviewing claims of ineffective assistance of counsel:

"When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State*, 891 P.2d 793, 796 (Wyo. 1995); *Starr v. State*, 888 P.2d 1262, 1266–67.(Wyo.1995); *Arner v. State*, 872 P.2d 100, 104 (Wyo.1994); *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt*, at 796; *Starr*, at 1266; *Arner*, at 104; *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias*, an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Starr*, at 1266; *King v. State*, 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State*, 728 P.2d 628, 629 (Wyo.1986); *Frias*, 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to 'render such assistance as would have been offered by a reasonably competent attorney' and that 'counsel's deficiency prejudiced the defense of [the] case.' *Lower v. State*, 786 P.2d 346, 349 (Wyo.1990). 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.'

*Chapman v. State*, 2001 WY 25, ¶ 6, 18 P.3d 1164, 1168–69 (Wyo.2001) (*quoting*

*Grainey v. State,* 997 P.2d 1035, 1038–39 (Wyo.2000)). This test has been specialized for cases where entry of a guilty plea is challenged on the basis of ineffective assistance of counsel:

> When an attorney has allegedly misadvised his client with respect to the entry of a guilty plea, a determination must be made of whether the decision to plead and forego the defense of his case resulted in prejudice to the client. That determination involves two interrelated questions: whether, in the absence of counsel's error, the recommendation of a reasonably competent attorney concerning the plea would differ from that given; and, whether, absent the error, the outcome of a trial would have been more advantageous to the client than the result of his plea. *Hill [v. Lockhart],* 474 U.S. [52] at 59–60, 106 S.Ct. [366] at 370–71 [88 L.Ed.2d 203 (1985)]. The defendant may also establish the necessary prejudice by proof of circumstances indicating that, in deciding whether or not to plead guilty, he placed special emphasis on the challenged aspect of his attorney's advice. He must suggest to the reviewing court a plausible reason why, had his representation been as he claims it should have been, he would have chosen to forsake the benefits of his plea agreement for the risks of trial. *Id.; see also Worthen [v. Meachum],* 842 F.2d [1179] at 1184 [ [ (10th Cir.1988) ].

*Lower v. State,* 786 P.2d 346, 349 (Wyo. 1990); *see also Brock v. State,* 981 P.2d 465, 469 (Wyo.1999). The burden of proving that counsel was ineffective rests on the appellant. *Sorensen v. State,* 6 P.3d 657, 660 (Wyo.2000), *cert. denied,* 531 U.S. 1093, 121 S.Ct. 818, 148 L.Ed.2d 702 (2001) (*quoting Frias v. State,* 722 P.2d 135, 145 (Wyo.1986)).

*Reyna v. State,* 2001 WY 105, ¶ 19, 33 P.3d 1129, 1134–35 (Wyo.2001).

## DISCUSSION

[¶ 13] Becker claims that his trial counsel was ineffective in three ways: (1) failing to continue the plea hearing so that his mental condition could be evaluated; (2) permitting Becker to plead despite his mental condition; and (3) failing to move for withdrawal of his nolo contendere pleas prior to sentencing. At its heart, Becker's claim is that his pleas were not knowing or voluntary because of his mental condition and his counsel's failure to prevent him from pleading or to take corrective action thereafter constituted a deficient performance. Becker alleges that the deficient performance of his counsel resulted in prejudice because there was a reasonable probability of a different result since he could have made pleas of not guilty by reason of mental illness or gone to trial under that defense.

[¶ 14] After examining the totality of the circumstances surrounding the pleas, we conclude that the record does not support Becker's claims. At the outset, we note that the mere fact that Becker may have suffered from some mental health problems that were manifested in terms of depression or suicidal thoughts is not sufficient in and of itself to render his pleas involuntary. *See Eathorne v. State,* 448 So.2d 445, 449 (Ala.Cr.App.1984) and *State v. Byrge,* 225 Wis.2d 702, 594 N.W.2d 388, 392 fn. 3 (Wis.App.1999) ("A person is not incompetent simply because he or she is not in good mental health or because he or she has thoughts that a mature, healthy individual would not have.").

> [T]he mere presence of mental illness or other mental disability at the time Bolius entered his plea does not necessarily mean that he was incompetent to plead under the *Dusky* test. *Dusky v. United States,* 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. The mental illness or disability must have been so debilitating that Bolius was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings.

*Bolius v. Wainwright,* 597 F.2d 986, 990 (5th Cir.1979). There is nothing in the record to indicate that Becker's alleged mental disability was so debilitating as to render him incapable of consulting with his lawyer or unable to understand and participate in the sentencing proceedings. The record, in fact, shows that Becker was fully cognizant of the proceedings and that his plea was knowledgeably and voluntarily given.

[¶ 15] When the hearing commenced on the morning of August 18, 2000, Becker's counsel notified the court of the alleged suicide attempt the night before and questioned Becker's competence to proceed with a plea hearing. She also filed a written motion with the court to suspend the proceedings pending a mental health evaluation. At that point, the district court noted that it did not have any factual basis to conclude that Becker had, in fact, attempted suicide. Accordingly, the court recessed the hearing for the specific purpose of allowing the parties, including defense counsel, time to investigate.

[¶ 16] When the hearing recommenced on that afternoon, neither party nor the court mentioned the attempted suicide or Becker's mental condition. Instead, the parties proceeded directly to the details of the plea agreement. Ideally, Becker's counsel should have addressed the issue and at least explained why it was no longer a concern. However, that failure does not necessarily constitute a deficient performance on her part. Clearly, since she raised the issue at the morning hearing and filed a written motion to suspend the proceedings in favor of an evaluation, counsel was aware of the potential concerns surrounding Becker's mental condition. As Becker admits, his counsel had provided him with exemplary representation during the proceedings, including obtaining a hung jury in his first trial. Becker concludes from the silence in the record during the afternoon plea hearing, that his counsel had suddenly become ineffective. However, one can also infer from that silence that counsel followed the district court's direction to investigate the alleged suicide and Becker's mental condition during the hearing recess and concluded that there was no substance to any claim of mental impairment and that the best course of action was to simply proceed with the plea agreement. Such an inference is supported by the comments of Becker's counsel during the afternoon plea hearing:

> I would wish to add one thing at this point, that Mr. Becker after full consultation with myself and the defense team including Miss Parnell and Mr. Goldberg, in light of the fact that there would be new physical evidence and pending charges, that Mr. Becker wished to not fight these charges.
>
> He would also like the Court to know that it was his sincere desire to avoid having his granddaughter take the stand again, and to avoid having these other two young women have to get on the stand and testify.

We presume that counsel rendered adequate representation and exercised reasonable professional judgment in all significant decisions. *Reyna*, 2001 WY at ¶ 19, 33 P.3d 1129. In the absence of any evidence to the contrary, we will presume that counsel's "full consultation" with Becker included consideration of his mental capacity and his ability to knowingly and voluntarily plead to the charges against him.

## CONCLUSION

[¶ 17] A claim of ineffective assistance of counsel based on an allegedly invalid plea of guilty or no contest to criminal charges must necessarily be accompanied by a demonstration that the plea was not knowledgeable or voluntary. If the plea is attacked through a claim that the defendant was mentally incompetent to render a knowledgeable or voluntary plea, then the defendant must show that he was so debilitated that he was unable to consult with his attorney and did not have a rational and factual understanding of the proceedings at the time the plea was given.

[¶ 18] In this case, the record indicates that Becker's pleas were knowingly and voluntarily given with full cognizance and understanding of the consequences. The mere fact that Becker may have been suffering from depression and expressed suicidal inclinations is not, in and of itself, enough to make him incompetent to plead. The record supports the conclusion that Becker was competent to plead and, accordingly, he has failed to negate the presumption that his counsel provided adequate representation. Becker's pleas and sentences are affirmed.