2004 WY 146

**Michael BARNES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 04–26.**

Supreme Court of Wyoming.

Nov. 29, 2004.

Representing Appellant: Dion J. Custis, Cheyenne, WY. Argument by Mr. Custis.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; Jenny L. Craig, Student Director; and Chris Leger, Student Intern. Argument by Ms. Craig.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and DONNELL, D.J.

DONNELL, District Judge.

[¶ 1] Appellant, Michael Barnes, appeals a jury's verdict finding him guilty on one count of aggravated assault. He claims ineffective assistance of counsel. Finding no support for this assertion in the record, we affirm.

[¶ 2] On January 9, 2003, Goshen County law enforcement officers received a call to respond to a residence on the north side of Torrington, Wyoming. They were advised a female caller had reported that she was being threatened by a man with a gun. The first officer to arrive at the scene was Sheriff Donald J. Murphy, followed shortly thereafter by Torrington Chief of Police Billy Janes, Wyoming Highway Patrolman Michael Lowry, and other officers.

[¶ 3] Sheriff Murphy immediately observed a white pickup truck with the doors open and an individual, later identified as Appellant, standing between the open doors with what appeared to be a rifle or shotgun. Sheriff Murphy opened the door on his patrol car and ordered Appellant to put the weapon down. Appellant then stepped away from his truck, lowered the gun, which turned out to be a shotgun, to his hip and advanced toward the Sheriff with one hand on the pistol grip of the shotgun, the other hand on the fore-

end, and the barrel pointed in the Sheriff's direction. Sheriff Murphy later testified that this action frightened him because Appellant seemed to be "looking through" him or somehow not seeing him. Sheriff Murphy drew his service pistol, pointed it at Appellant, and continued to order him to drop the shotgun. Trooper Lowry had, in the meantime, retrieved a shotgun from his own patrol vehicle; loaded the chamber; and pointed it at Appellant. He, too, ordered Appellant to drop his weapon. Appellant turned and looked at Trooper Lowry, then lowered the barrel of his shotgun and laid it against his pickup truck. He was then taken into custody and transported to the Goshen County detention facility.

[¶ 4] Appellant was subsequently tried on one count of aggravated assault in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii) (LexisNexis 2003). At trial, the primary witnesses for the State were Sheriff Murphy, Chief of Police Janes, and Trooper Lowry. During the course of voir dire, prospective jurors were questioned by the State, and to a much greater degree by the defense, concerning their knowledge and opinions of law enforcement officers in general and their relationships, contacts with, and perceptions of the three primary witnesses in particular. A number of potential jurors were dismissed for cause after having expressed strong opinions, one way or another, about law enforcement officers or the witnesses. No juror was seated who had described any relationship with, or strong opinion of, Sheriff Murphy or the other officers. The defense passed the jury for cause at the conclusion of voir dire.

[¶ 5] Appellant now asserts ineffective assistance of counsel. He argues, first, that trial counsel failed to adequately question potential jurors to ferret out undue prejudice. Second, he argues that, since Sheriff Murphy was an elected official and the victim of the crime, his attorney's performance was deficient in failing to request a change of venue prior to trial. Appellant asserts that one or more persons on the jury must have voted for Sheriff Murphy; that such persons must, therefore, have been inherently biased in favor of the sheriff's testimony; that Appellant could not, therefore, receive a fair

trial in Goshen County; and that a change of venue should have been requested. He states the following issue for our consideration:

Appellant's case was prejudiced due to the ineffective assistance of counsel.

The State's issues are stated with somewhat greater particularity:

I. Did Appellant's trial counsel provide ineffective assistance when she did not file a motion for a change of venue?

II. Did Appellant's trial counsel fail to examine prospective jurors effectively during *voir dire*, and thereby deny Appellant the effective assistance of counsel?

### STANDARD OF REVIEW

[¶ 6] We have recently specified the standard of review in cases involving claims of ineffective assistance of counsel:

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State,* 891 P.2d 793, 796 (Wyo. 1995); *Starr v. State,* 888 P.2d 1262, 1266–67 (Wyo.1995); *Arner v. State,* 872 P.2d 100, 104 (Wyo.1994); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt,* at 796; *Starr,* at 1266; *Arner,* at 104; *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias,* an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Starr,* at 1266; *King v. State,* 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986); *Frias,* 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of the case." *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

*Asch [v. State,* 2003 WY 18, 62 P.3d 945 (Wyo.2003) ], ¶ 11 (quoting *Becker v. State,* 2002 WY 126, ¶ 12, 53 P.3d 94, ¶ 12 (Wyo. 2002); *Reyna v. State,* 2001 WY 105, ¶ 19, 33 P.3d 1129, ¶ 19 (Wyo.2001); *Chapman v. State,* 2001 WY 25, ¶ 6, 18 P.3d 1164, ¶ 6 (Wyo.2001); *Grainey v. State,* 997 P.2d 1035, 1038–39 (Wyo.2000)). The burden of proving that counsel was ineffective rests entirely on an appellant. *Asch,* ¶ 11 (citing *Barkell v. State,* 2002 WY 153, ¶ 10, 55 P.3d 1239, ¶ 10 (Wyo.2002)). To satisfy his burden, an appellant must provide more than mere speculation or equivocal inferences. *Sincock v. State,* 2003 WY 115, ¶ 37, 76 P.3d 323, ¶ 37 (Wyo.2003) (citing *Barkell,* ¶ 13).

*Duke v. State,* 2004 WY 120, ¶ 36, 99 P.3d 928, ¶ 36 (Wyo.2004).

### DISCUSSION

[¶ 7] Appellant asserts he received ineffective assistance of counsel because his trial attorney failed to request a change of venue. Of course, a change of venue may be granted only under certain limited circumstances:

Criminal defendants in Wyoming have a constitutional right to a trial by an impartial jury. Wyoming's constitutional provision grants the right to trial "by an impartial jury of the county or district in which the offense is alleged to have been committed." Wyo. Const. art. 1, § 10. The legislative provision mirroring the constitution requires "[e]very criminal case shall be tried in the county in which the indictment

or offense charged is found, except as otherwise provided by law." Wyo. Stat. Ann. § 1–7–102(a) (Lexis 1999). Trial proceedings are transferred to another county "only if the court is satisfied that there exists within the county where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial in that county." W.R.Cr.P. 21(a).

*Urbigkit v. State*, 2003 WY 57, ¶ 27, 67 P.3d 1207, ¶ 27 (Wyo.2003) (quoting *Nixon v. State*, 994 P.2d 324, 327 (Wyo.1999)). This case was not one that generated a great deal of pretrial publicity. In fact, most of the prospective jurors had no knowledge of the case when they reported for jury duty. The question, then, is not whether a change of venue might have been appropriate prior to voir dire, as there was no apparent reason to anticipate such, but whether voir dire, if properly handled by defense counsel, would have revealed "so great a prejudice against the defendant that [he could not] obtain a fair and impartial trial in [Goshen County]." *Urbigkit*, ¶ 27. Absent such, a change of venue could not have been granted.

[¶ 8] Here, Appellant is required to meet a two-part test. First, he must show that defense counsel's performance was deficient and, second, that this deficiency prejudiced him. *Duke*, ¶ 36. In cases involving jury selection, we have stated "[b]ecause voir dire questioning techniques are diverse, any inadequacy in voir dire questioning must be egregious and obvious to fall below the line of competence." *Sorensen v. State*, 6 P.3d 657, 661 (Wyo.2000).

[¶ 9] Our review of the record in this matter reveals no reason to conclude that defense counsel's performance in questioning potential jurors was in any way deficient. It should be noted that her questioning followed an in-depth examination by the prosecutor that revealed several relationships with law enforcement officers and potential biases among the members of the jury panel. Despite the fact that Appellant's attorney was, quite properly, not permitted to ask questions that had been previously asked and answered, she was able to delve into issues of law enforcement relationships and bias in considerable detail. Defense counsel asked potential jurors about people they knew, including law enforcement officers and members of Appellant's family. She asked about opinions, rumors, feelings about, and relationships with law, enforcement officers. Because the alleged crime involved a firearm, she asked about past experiences with guns and violent crime. Ultimately, she succeeded in having four potential jurors excused for cause because of their relationships with, and strong prejudices in favor of, law enforcement officers. In fact, the only potential juror who expressed any sort of bias at all and who was not excused for cause was one Mrs. Tollefson. However, Mrs. Tollefson did not sit on the jury. We conclude that Appellant has not shown any error so egregious and obvious as to fall below the line of competence. That being the case, we need not consider whether his defense was somehow prejudiced. *Sorensen*, at 661.

[¶ 10] Appellant asserts one other claim. He argues that the nature of the sheriff's position, that being an elected office, was such as to cause inherent prejudice in the sheriff's favor on the part of anyone who voted for him. Appellant concludes that defense counsel should have inquired into potential jurors' voting decisions when Sheriff Murphy was elected. He argues that the district court then should have presumed some sort of irreversible prejudice on the part of any such venire person who had voted for Sheriff Murphy, thus requiring a change of venue.

[¶ 11] We need not determine whether inquiry into an individual's secret- ballot is proper.[1] We simply do not see that such inquisition, even if proper, would have led to any additional pertinent information. Venire members were asked about their prejudices, their feelings, and their opinions concerning law enforcement officers in general and, where appropriate, Sheriff Murphy in particular. Several members of the venire re-

---

1. While we do not decide the issue here, it is worth noting that at least one court that has considered the question has held that inquiry into how a potential juror voted in a secret election is not proper. Barry P. Goode, *Religion, Politics, Race, and Ethnicity: The Range and Limits of Voir Dire*, 92 Ky. L.J. 601, 628 (2004); *Wallace v. State*, 2004 Tex.App. LEXIS 5541 (2004); *State v. Bolstad*, 188 Wis.2d 79, 524 N.W.2d 647 (App.1994).

vealed biases or prejudice that resulted in their dismissals. We see no reason to conclude here that questions about one's voting record would have revealed any additional information or would have led any juror who eventually was seated, and who expressed no bias or prejudice, to suddenly resolve he or she could not be impartial simply because that juror might have voted for one of the witnesses in the past. Nothing in the record suggests that the trial court reasonably could have concluded that Appellant could not receive a fair trial in Goshen County, and nothing suggests a change of venue would have been appropriate.

[¶ 12] Appellant's argument inevitably leads to the conclusion that a change of venue might be necessary in any case where a principal witness or a victim is also an elected official. Obviously, that result would apply in most criminal trials and nearly any civil matter involving the government or an elected official either as a party or as a factual witness. This Court is aware of no state where such is the rule or practice and, in a state like Wyoming, such would be practically impossible. In any event, we are unable to conclude that Appellant was prejudiced, in any respect, by the failure to inquire into potential jurors' voting decisions.

[¶ 13] Appellant's conviction and sentence are affirmed in all respects.